# Exhibit E

REDACTED

VENABLE LLP

2049 CENTURY PARK EAST SUITE 2300 LOS ANGELES, CA 90067
T 310.229.9900 F 310.229.9901 www.Venable.com

November 20, 2023

William J. Briggs, II

t 310.229.9933
f 310.229.9901
wjbriggs@venable.com

CONFIDENTIAL LEGAL NOTICE
PUBLICATION OR DISSEMINATION IS PROHIBITED

**VIA EMAIL**

Evgeny Bolotin
[redacted]

**Re: Petra Starke "Documentary" / Dan Blaylock**

Dear Mr. Bolotin:

We are litigation counsel for Dan Blaylock ("Mr. Blaylock"), one of the subjects of Petra Starke's so-called Documentary ("the Proposed Documentary") about her life that you have circulated today to several individuals, including but not limited to, Dan B. Duke, Bruce Blaylock, and Frazier Blaylock. This letter concerns your plans to produce, publish, and distribute the Proposed Documentary.

There are substantial legal restrictions on an individual's right to produce, publish and distribute a film (documentary) about private figures which are fundamentally untruthful, defamatory, invades a person's right of privacy, wrongfully appropriates or exploits the person's right of publicity, and promotes the film in an unfair and misleading way. Here, Mr. Blaylock strongly objects to and will exercise his legal rights and remedies regarding the production, publication and distribution of the Proposed Documentary to the extent that it is defamatory, invades his right of privacy, commercially appropriates his right of publicity, uses fiction-masquerading-as-fact, misrepresents him, and alleges that he may have participated in the Proposed Documentary, or otherwise violates his rights in the ways described in this letter.

To be clear, Mr. Blaylock nor any of his direct family members have been interviewed for, nor have they cooperated or consented to participate in any way in the production and publication of, the Proposed Documentary. Indeed, for several reasons, some of which are discussed in this letter, my client objects to the production and publication and distribution of the Proposed Documentary and therefore will not consent to or otherwise authorize, sponsor, endorse or support the production or publication or distribution of the Proposed Documentary. Among other reasons, direct family members of Mr. Blaylock who have some personal knowledge about him and his life will not give interviews for the Proposed Documentary, leaving Ms. Starke to merely republish and regurgitate

fabricated and fictionalized episodes and incidents about him. Such conduct exposes Ms. Starke and all those who act in concert with her to substantial liability and damages.

In a segment of the Documentary Ms. Starke describes several alleged incidents that involve Mr. Blaylock as follows:

He raped me on two occasions. He forcibly sodomized me twice, once with a butt plug. His use of the butt plug to sodomize me caused me rectal cancer.

Each of the above summarized allegations are unequivocally false and defamatory. Ms. Starke was in a consensual sexual relationship with Mr. Blaylock even while she was married to George Starke. There is a plethora of evidence to establish the consensual sexual relationship between Ms. Starke and Mr. Blaylock, all of which is in the possession of Ms. Starke. Additionally, there is absolutely no medical or scientific evidence or peer-reviewed medical article that establishes an individual can acquire rectal cancer from anal sex or the insertion of sexual instruments into the anus. Ms. Starke's brazen and incredulous lies about Mr. Blaylock subject her to significant liability not only for her defamatory statements, but also for her theft of Mr. Blaylock's private information. As you appear to act in concert with Ms. Starke by your dissemination of such false and defamatory material and publication of Mr. Blaylock's private information, your conduct has been injurious to my client. Therefore, along with Ms. Starke, you are acting at your peril, and with conscious disregard of the truth or falsity about things you have produced and published and intend to distribute about Mr. Blaylock in the Proposed Documentary.

If you or anyone else further publishes the Proposed Documentary, it or they would similarly be acting with malice. By deciding arbitrarily whether to include certain information, anecdotes, events, conversations, etc. about Mr. Blaylock, it would be as if you were playing Russian Roulette with the truth, and would increase your exposure to liability and damages, which would inevitably result from the production and publication and distribution of the Proposed Documentary, since it would, no doubt, contain many things about my client are demonstrably false and defamatory, or fiction- masquerading-as-fact (whether defamatory or not), or which depict him in a false light in violation of his right of privacy.

This will constitute notice to you that if you do proceed to cause the further publication (*i.e.*, sending segments of the so-called documentary) of the Documentary about my client, which is, in whole or in part, false and defamatory of him, or which depicts him in a false light in violation of his right of privacy, or which constitutes publication of private facts in violation of his right of privacy, or constitutes a false endorsement or false designation of origin, leading the public to believe that Mr. Blaylock and/or members of their family have endorsed, or sponsored, or are otherwise participating or cooperating in the production, publication and distribution of the Documentary, you and all others acting in concert with you will be held accountable and liable for

VENABLE LLP



any damages which any of them suffer, either in the form of loss of income, or other special damages, damage to reputation, or by the infliction of emotional distress.

As stated by the California Court of Appeal in *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 198 Cal.Rptr. 342 (1983), the National Enquirer's use of Clint Eastwood's name and likeness in a story fictionalizing a romance involving Clint Eastwood gave rise to a valid cause of action by Eastwood against the National Enquirer for unauthorized commercial use of his name and likeness in violation of California Civil Code §3344 and the California common law right of publicity. Deliberate fictionalization presented as truth was held wrongful and actionable and exposed the National Enquirer to a claim for any damages that Clint Eastwood suffered, as well as a disgorgement of all profits that the National Enquirer obtained from the fictionalized story and an award of attorney fees.

Similarly, in the case involving the famous baseball pitcher Warren Spahn, the New York Court of Appeals held that the "knowing fictionalization [of a real person's life] . . . would amount to a literary license which is not only unnecessary to the protection of free speech, but destructive of an individual's right . . . to be free of the commercial exploitations of [the person's] name and personality." *Spahn v. Julian Messner, Inc.*, 18 NY.2d 324, 221 NE.2d 543, 274 NYS.2d 877 (1966), *vacated & remanded*, 387 U.S. 239, *motion to amend remittitur granted*, 20 NY.2d 752, 229 NE.2d 712, 283 NYS.2d 119, *affirmed on reconsideration*, 21 NY.2d 124, 233 NE.2d 84, 286 NYS.2d 832 (1967), *appealed dismissed*, 393 U.S. 1046 (1969).

Of course, any fabricated quotes or deliberate falsification of words uttered by a person in an interview equates with knowledge of falsity for purposes of the constitutional standard in *New York Times v. Sullivan* if the alteration results in a material change in the meaning conveyed by the statement, bearing upon the defamatory or otherwise actionable nature of the statement. As the Supreme Court stated in *Masson v. New Yorker Magazine*, 501 U.S. 496, 111 S.Ct. 2419 (1991):

"A quotation may be a devastating instrument for conveying false meaning."

In the 24-minute segment of the Documentary attached to your email, Ms. Starke ascribes certain statements to Mr. Blaylock. Ms. Starke has fabricated those statements from whole cloth. Simply stated, not a single word that Ms. Starke attempts to attribute to Mr. Blaylock is truthful. Rather, Ms. Starke has fictionalized and fabricated quotes that she attributes to Mr. Blaylock in an attempt to dramatize events and shock people at the expense of my client. Given the fact that Ms. Starke has irrefutable knowledge that quotes she attributes to my client are false, Ms. Starke is presumed to act with malice towards my client. Ms. Starke and all those who act in concert with her therefore expose themselves to liability for punitive damages.

VENABLE LLP



It is also well established that "defamation by implication stems not from what is literally stated, but what is implied." (emphasis added). *Forsher v. Bugliosi*, 26 Cal.3d 792, 803, 163 Cal.Rptr. 628 (1980); *Toney v. WCCO Television, Midwest Cable and Satellite, Inc.*, 85 F.3d 383 (8th Cir.1996); *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990).

Ms. Starke's attempt to demonize Mr. Blaylock for his private lifestyle implies that Mr. Blaylock is somehow evil or to be shunned by society. *See*, *Hughes v. Hughes*, 122 Cal.App.4th 931 (2004) ("A statement may be a characterization of the person about whom it is made that expresses the maker's unfavorable judgment upon undisclosed conduct of the other. If this unfavorable comment implies the existence of facts that justify the terms in which he has described the person of whom he spoke, it is the truth of these facts that is to be determined."); *Corey v. Pierce County*, 2010 WL 2455956 (Wash. Ct. App. Div. 1 2010) (defamation by implication occurs when "the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'") *See also*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (defamation arises from a statement that "reasonably implies false and defamatory facts" where the plaintiff "shows that such statements were made with knowledge of their false implications or with reckless disregard of their truth."); *Heyward v. Credit Union Times*, 2012 WL 6632764 (D.N.M. 2012) ("'The theory of defamation by implication recognizes that the reputational injury caused by a communication may result not from what is said but from what is implied.'")

Ms. Starke's broadly stated falsehoods about being raped by my client, and her statements about my client's sex life, portrays my client in a negative fashion ascribing to him moral corruption and ill-repute. It is well established that defamation may be accomplished through inference, innuendo or insinuation. Somalia, Law of Defamation (2d Ed.) Vol. 1, §4:17 (2013).

Ms. Starke's fabricated narrative about Mr. Blaylock is unabashedly damaging to his character. Ms. Starke's fictional dialogue attributed to Mr. Blaylock establishes her malicious intent to cause Mr. Blaylock injury. Ms. Starke's implied false facts about my client demonstrates her ill intent towards Mr. Blaylock. Such an implication and interpretation further underscore the reputational harm your intended further publication of the Documentary is likely to cause Mr. Blaylock.

Also, if there is any statement, expressed or implied, or any suggestion or innuendo in the Proposed Documentary, or in any advertising or promotion for the Documentary, that the Documentary is authorized by Mr. Blaylock, or that he has endorsed the Proposed Documentary or that he has participated in any way in the production of the Documentary, or that he has agreed to the publication and distribution of the Documentary, this would constitute a blatant violation of the U.S. Lanham Act, including § 43(a) of the Act (15 U.S.C. Section 1125(a),) since any "false representation" or "false designation of origin" is prohibited. The courts have determined that any "false attribution" of "authorship constitutes a violation of Section 43(a) if it misrepresents the

VENABLE LLP



contribution of any person," (*Rosenfeld v. WP. Saunders*, 728 F.Supp 236, 243, (S.D.N.Y. 1990)). *See also*, *LaMothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1407 (9th Cir. 1988); *Gilliam v. American Broadcasting Co.*, 538 F.2d 14 (2nd Cir. 1976); *Smith v. Montoro*, 648 F.2d 602 (9th Cir. 1981).

This will also constitute notice that if you, or any of your employees, agents, or representatives, use any techniques in connection with your doing any interviews, investigation, or producing of the Proposed Documentary, which violate Mr. Blaylock's rights or anyone else's rights, through invasion of privacy, trespass, false representations, fraud, or deceit, you will be liable for any such tortious practices. You are on notice that each of the photographs and text messages that you attached to your email were stolen by Ms. Starke from Mr. Blaylock, and therefore each are Mr. Blaylock's private property. You are not authorized to use any such photos and/or text messages. Your failure to comply with this demand that no such photos, text messages, email messages that belong to Mr. Blaylock be further published, disseminated, and exploited by you will result in your being held liable for all legal remedies at Mr. Blaylock's disposal.

In addition, if any false representations or deceit are used to fraudulently induce third parties (including Mr. Blaylock's family members or friends) to provide otherwise confidential information, or to be deceived into cooperating in providing information under false pretenses then you, as well as your employees and/or agents are exposing yourselves to liability for intentional misrepresentation, fraud and deceit. *See*, *for example*, *Veilleux v. NBC*, 8 F.2d 23 (D.Me. 1998); (court ruled that misrepresentations by the media to obtain information or induce cooperation was actionable). *See also*, *Belluomo v. Kake TV & Radio, Inc.*, 3 Kan.App.2d 461, 596 P.2d 832 (1979); *Braun v. Flynt*, 726 F.2d 245 (5th Cir.1984) (the jury had found that defendant Hustler Magazine had misrepresented to the plaintiff the true nature of the magazine in obtaining plaintiff's consent regarding publication of a photo, and had falsely described and represented the magazine to be a "fashion magazine" with travel articles and having the same readership as Redbook or McCall's).

In sum, you are to immediately cease and desist in dissemination and publication of the false, fabricated, highly fictional, and defamatory Documentary by Ms. Starke. You are to cease and desist in emailing, texting, private messenging anyone with this defamatory material. Should you decide to ignore these demands, you will act at your own peril. You will expose yourself to additional liability for intentionally spreading lies about my client despite having notice. I trust that you will govern yourselves accordingly.

This letter does not constitute a complete or exhaustive statement of all my client's rights, claims, contentions, or legal theories. Nothing stated herein is intended nor should it be deemed to constitute a waiver or relinquishment of any of my client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

VENABLE LLP



This is a confidential legal notice and is not for publication. Any publication, dissemination or broadcast of any portion of this letter will constitute a breach of confidence and a violation of the Copyright Act. You are not authorized to publish this letter in whole or in part absent our express written authorization.

Very truly yours,

William J. Briggs, II

cc: Keith Berglund
Jessie Beeber, Esq.