UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAN M. BLAYLOCK, <br><br> Plaintiff, <br><br> v. <br><br> PETRA SMELTZER STARKE, *et al.*, <br><br> Defendants. | Case No. 1:23-cv-03606 (TNM) |

**MEMORANDUM ORDER**

Plaintiff Dan M. Blaylock sues Defendant Petra Smeltzer Starke for defamation, invasion of privacy, and related claims. Blaylock filed his Complaint on December 4, 2023. Compl, ECF No. 1. Last month, Blaylock submitted an affidavit from a process server who attested that he properly served Starke at her residence on December 20, 2023. *See* Return of Service/Affidavit, ECF No. 5. Two days later, Starke filed a "Motion to Quash," arguing that Blaylock had not properly served her under Federal Rule of Civil Procedure 4(e). *See* Motion to Quash (Mot.) at 6, ECF No. 6. The Court construed Starke's Motion as a motion to dismiss for insufficient service of process under Rule 12(b)(5) and ordered a briefing schedule. The Motion is now ripe. After considering the parties' briefing and the relevant law, the Court denies Starke's Motion and orders her to respond to Blaylock's Complaint.

**I.**

Blaylock alleges that his agents made two attempts to personally serve Starke at her Florida residence. On December 14, 2023, Blaylock's process server approached Starke's residence in Bradenton, Florida. Affidavit of Mike Barbeiro, ECF 9-4. The process server

alleges that he spoke with Starke's minor son, who called for "Petra . . . Mom," but then told him that she was not home.  *Id*.  Starke's son closed the door and the process server returned to his car.  *Id*.  While waiting for instructions, the process server was approached by a deputy sheriff.  *Id*.  The deputy was responding to a call from the Starke residence claiming that the process server had tried to forcibly enter the home.  *Id*.  The deputy advised the process server to leave copy of the Summons and Complaint at the front door, which he did.  *Id*.

Six days later, Blaylock dispatched a different process server to Starke's residence.  Affidavit of Steven T. Zawacki (Zawacki Aff.), ECF No. 9-5.  After ringing the Starke's doorbell, the process server heard a man yell, "Petra[,] someone is at the door."  *Id*.  A few minutes later, Starke came to the door and peered through the side window.  *Id*.  The process server recognized Starke from social media photos.  *Id*.  He told her, "Petra, I have a summons and complaint for you."  *Id*.  According to the process server, Starke refused to open the door and walked away.  *Id*.  The process server left the Summons and Complaint at the doorstep.  *Id*.

In her Motion and accompanying Declaration, Starke concedes that process servers tried to serve her at her residence on December 14 and 20, 2023.  Mot. at 1–2; Declaration of Petra Smeltzer Starke (Starke Decl.) ¶ 4, ECF No. 6-2.[1]  She also concedes that she was at home for both attempts.  *Id*. ¶¶ 6, 10.  She asserts, however, that the first process server "shoved" her son and attempted to "illegally enter" her residence.  *Id*. ¶ 5.  Additionally, she claims that on December 20, she was "bedridden" when the process server rang the doorbell.  *Id*. ¶ 10.  According to Starke, neither she nor her husband "ever opened the door, interacted with

---

[1] Starke's Motion and Declaration assert that the first service attempt occurred on December 10, not December 14.  *See* Mot. at 1; Starke Decl. ¶ 4.  Neither party suggests that this discrepancy is material.

2

Plaintiff's agent, []or received a copy of the Summons and Complaint. *Id*. ¶ 14. Accordingly, she argues Blaylock has not properly served her so his Complaint should be dismissed.

## II.

The Court may grant a motion to dismiss for failure to serve process under Federal Rule of Civil Procedure Rule 12(b)(5) when a plaintiff fails to "demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987). Rule 4(e) governs service of individuals within the United States. Fed. R. Civ. P. 4(e). To effect service under Rule 4(e)(1), a plaintiff may "follow[] state law for serving a summons in . . . the state where the district court is located or where service is made." *Id*. 4(e)(1). Alternatively, a plaintiff may effect service under Rule 4(e)(2)(A) by "delivering a copy of the summons and of the complaint to the individual personally." *Id*. 4(e)(2)(A).

Where, as here, a defendant challenges the validity of service, "the plaintiff bears the burden of proving that service was sufficient." *Paul v. Didizian*, 292 F.R.D. 151, 154 (D.D.C. 2013). That said, "where the defendant has received actual notice of the action, the provisions of Rule 4(e) should be liberally construed to effectuate service and uphold the jurisdiction of the court." *Roland v. Branch Banking & Tr. Corp.*, 149 F. Supp. 3d 61, 65 (D.D.C. 2015) (cleaned up). "The rules governing service of process are not designed to create an obstacle course for plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." *Id*. (cleaned up).

Starke argues that Blaylock has not complied with Rule 4 because his process servers did not personally deliver a copy of the Summons and Complaint. The Court disagrees.

3

Start with Blaylock's second attempt at service, since this was the attempt Blaylock relied on in his initial Return of Service filing. *See* Return of Service/Affidavit. On this attempt, the process server did not hand the Summons and Complaint directly to Starke because she either refused to or could not come to the door. Zawacki Aff. But Blaylock alleges that he still carried out proper service by leaving the Summons and Complaint at the doorstep after announcing to Starke that "she had been served." *Id*.

Under Florida law, "[s]ervice of original process is made by delivering a copy of it to the person to be served with a copy of the complaint . . . ." Fla. Stat. § 48.031(1)(a). But service need not be in-hand to be effective. *Haney v. Olin Corp.*, 245 So. 2d 671, 673 (Fla. 4th DCA 1971). "The real purpose of the service of summons is to give proper notice to the defendant in the case that he is answerable to the claim of plaintiff." *Id*. at 673. Therefore, the "mere leaving of the suit papers on the door step can become effective delivery" so long as the defendant "was physically present on the premises, was reasonably apprised of the [process server's] presence and purpose, and could have had the suit papers placed directly in his hand by the simple expedient of opening the door in response to the [process server's] request." *Id*. at 673–74. Reasonable attempts to effect personal service cannot be frustrated by a defendant "willfully refusing to accept service of process." *Id*. at 673; *see Coffin v. Brandau*, 642 F.3d 999, 1007 (11th Cir. 2011) ("Under Florida law, a person has the legal obligation to accept service of process when service is attempted reasonably.").

Meanwhile, to satisfy the federal service requirements under Rule 4(e)(2), a process server generally must "present a copy of the summons and complaint to the party to be served and receive an acknowledgment of delivery." Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1095 (4th ed. 2015). "But a face-to-face encounter and an in-

4

hand delivery of the papers is not always essential." *Id*. Akin to Florida law, if a defendant takes "knowing and intentional actions to evade service . . . it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1136 (9th Cir. 2009) (cleaned up); *see also Novak v. World Bank*, 703 F.2d 1305, 1310 n.14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person."); *Sparton Eng'd Prod., Inc. v. Cable Control Techs., Inc.*, 178 F.3d 1296 (6th Cir. 1999) ("[O]ne cannot avoid service by refusing physically to accept the summons, once informed that the service of summons is being attempted.").

Blaylock's December 20 service of process was proper under either Rule 4(e)(1) or (e)(2)(A). To start, the Court finds that Starke took knowing and intentional actions to evade service. According to the process server's affidavit, Starke came to the door but refused to open it after he said "Petra[,] I have a summons and complaint for you." Zawacki Aff. Since he could not hand the papers directly to Starke, the process server made a reasonable effort to leave the papers with her by placing them on the doorstep. *Id*. Though Starke claims that she never received the Summons and Complaint, a defendant in these circumstances is not required to "take the papers into his or her possession" to carry out service. Wright & Miller § 1095.

Starke vociferously denies the process server's version of events. But "[a] signed return of service . . . constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *Roland*, 149 F. Supp. 3d at 65 (cleaned up). In her sworn declaration, Starke asserts the falsity of Blaylock's affidavits and quibbles with some assertions. Starke Decl. ¶¶ 5–15; *see also* Aff. of Def.'s Husband George Lawrence Starke, ECF 6-3. Still,

5

Starke admits that she was present at her residence when the process server attempted service. *See* Starke Decl. ¶ 10. She merely asserts that she could not go downstairs to check who was at the door due to her illness. Def.'s Reply to Pl.'s Opp'n (Reply) at 1, ECF No. 13. But Starke herself undermines this claim with her admission that she traveled to Colorado and skied in Aspen only shortly after the process server attempted service on December 20. *Id*. at 7. While the Court is sympathetic to good faith claims of illness and incapacity, it finds that the social media posts showing Starke skiing and engaging in other physical activities provide sufficient basis to question her candor. At the very least, the Court concludes that Starke has not provided "strong and convincing evidence" that undermines the process server's facially credible affidavit.[2]

Recall that courts "liberally construe[]" Rule 4's requirements where, as here, "the defendant has received actual notice of the action." *Roland*, 149 F. Supp. 3d at 65. Indeed, liberal construal of Rule 4 is especially appropriate given Starke's manifest intent to evade service. Rather than receive Blaylock's agent when he attempted to lawfully serve her at her residence on December 14, Starke called the police. And despite having actual notice of the Summons and Complaint, Starke continues to use the service requirements as an obstacle course to forestall further proceedings here. Were the Court to dismiss this action, it sees no reason why Starke would not continue to play this "cat-and-mouse game" to avoid lawful service under Rule 4. *Roland*, 149 F. Supp. 3d at 65. It therefore concludes that, though Blaylock failed at in-hand

---

[2] Starke argues that process server's affidavit was "false and fraudulent" because it provides an inaccurate description of her appearance. *See* Mot. at 6. But the Court does not find that minor discrepancies between the process server's description and her actual appearance materially undermines his credibility. Starke also argues service was improper because Blaylock's process server illegally trespassed into her private gated community. *See* Mot. at 4; Reply at 12. Florida law says otherwise, requiring gated residential communities to "grant unannounced entry . . . to a person who is attempting to serve process on a defendant." Fla. Stat. § 48.031(7).

personal service, he still properly served Starke under Rule 4 by placing the Summons and Complaint at Starke's door after notifying her that she had been served.[3]

The Court recognizes that this case involves an intensely personal dispute. But that does not change the Court's expectations for professionalism and decorum. For now, the Court assumes that Starke's Motion was made in good faith and not to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Still, the Court reminds both parties that all filings must comply with Rule 11(b). And the Court on its own initiative may order a party to show cause as to why it should not be sanctioned for Rule 11 violations. *Id*. 11(c)(3). The Court also cautions Starke that, as an attorney barred in the District of Columbia, she is subject to its Rules of Professional Conduct. Though she is proceeding *pro se*, she is still an officer of the Court, and the Court will therefore hold her to the same high standard of candor as it expects from all attorneys appearing before it. *See* D.C. R. Prof'l. Conduct 3.3 (outlining the duty of candor to the tribunal owed by any "lawyer," not just a lawyer representing a client).

---

[3] Because the Court finds that Blaylock effected service of process on December 20, 2023, it does not address whether Blaylock's first attempt at service also satisfied Rule 4.

## III.

For all these reasons, it is hereby

**ORDERED** that Defendant's [6] Motion to Quash is DENIED.  It is

**FURTHER ORDERED** that Defendant shall respond to Plaintiff's Complaint by or on March 8, 2024.

**SO ORDERED.**

Dated: February 24, 2024                      TREVOR N. McFADDEN, U.S.D.J.