UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAN M. BLAYLOCK,<br><br>      Plaintiff,<br><br> - against -<br><br>PETRA SMELTZER STARKE AND JOHN DOES 1 THROUGH 5,<br><br>      Defendants. | Case No.: 1:23-CV-3606-TNM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF DAN M. BLAYLOCK'S MOTION SEEKING A FINDING
OF CONTEMPT AND THE IMPOSITION OF SANCTIONS ON DEFENDANT
PETRA SMELTZER STARKE FOR WILLFUL FAILURE TO COMPLY
<u>WITH COURT-ORDERED DISCOVERY OBLIGATIONS</u>**

  Plaintiff Dan M. Blaylock ("Mr. Blaylock") files this Memorandum of Points and Authorities in support of his Motion Seeking a Finding of Contempt and the Imposition of Sanctions on Defendant Petra Smeltzer Starke ("Ms. Starke") for Willful Failure to Comply with Court-Ordered Discovery, pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rule 7 (the "Motion"). In support, Mr. Blaylock states as follows:

<u>**STATEMENT OF FACTS**</u>

  On December 4, 2023, Mr. Blaylock filed his complaint (ECF Nos. 1 & 2, hereinafter the "Complaint" or "Compl.") against Ms. Starke and unknown John Doe Defendants. The Complaint alleges that Ms. Starke has engaged in a multi-pronged attack against Mr. Blaylock, which has included: (i) circulating a video interview of herself to Mr. Blaylock's family and friends, in which she falsely claims on camera that Mr. Blaylock sexually assaulted her (the "Starke Video"); (ii) entreating Mr. Blaylock's family and friends by email to join her movement to "ban" Mr. Blaylock;

(iii) revealing to Mr. Blaylock's family and friends private information about Mr. Blaylock's personal life, including texts and photographs that Ms. Starke admits she took from Mr. Blaylock's personal electronic devices; (iv) weaponizing her cancer against Mr. Blaylock by falsely claiming that he caused her rectal tumor and hair loss; and (v) threatening Mr. Blaylock and attempting to extort money from Mr. Blaylock for her own personal gain. (Compl. ¶ 2).

Mr. Blaylock has brought eleven claims against Ms. Starke: (i) Defamation; (ii) Invasion of Privacy: False Light; (iii) Invasion of Privacy: Public Disclosure of Private Facts; (iv) Invasion of Privacy: Intrusion Upon Seclusion; (v) Intentional Infliction of Emotional Distress; (vi) Civil Conspiracy; (vii) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (viii) Violation of the Stored Communications Act, 18 U.S.C. § 2701, et seq.; (ix) Common Law Trespass to Chattels; (x) a request for Declaratory Relief regarding certain promises Ms. Starke alleges Mr. Blaylock made to her; and (xi) a request for Declaratory and Injunctive Relief regarding the conduct of Ms. Starke and her co-defendants. Compl. ¶¶ 30-42.

On January 14, 2024, after the Complaint was filed, Mr. Blaylock, his parents, and his brother received an email from someone named "Evgeny Bolotin" containing a link to a website titled "DanBlaylock.com" (the "Website"). *See* Declaration of Jake W. Goodman dated June 18, 2024 (ECF No. 41-2) (the "Goodman Decl."), Ex. A. The Website, which is publicly viewable as of the day of this filing, contains images of Mr. Blaylock's personal photos and texts, including nude photos of Mr. Blaylock. As Mr. Blaylock alleges in the Complaint, Ms. Starke took texts and nude photos that were stored by Mr. Blaylock on his personal electronic devices without Mr. Blaylock's authorization. Compl. ¶¶ 36, 38–39. Some of those same texts and photos also appear on the Website.

On February 9, 2024, Ms. Starke submitted a sworn affidavit to this Court stating that she "personally took screenshots" of communications between Mr. Blaylock and other people that came to Mr. Blaylock's personal devices, and that she has "several thousands" of those images. ECF No. 15-1, ¶¶ 12, 16.

On March 4, 2024, after this Court denied Ms. Starke's Motion to Dismiss Mr. Blaylock's Complaint, Ms. Starke moved for an extension of time to answer the Complaint, stating that the extension was necessary because of her health issues and because her attorney needed more time to familiarize himself with the case. *See* ECF No. 21. This Court granted Ms. Starke's request, and she answered the Complaint and filed Counterclaims on April 3, 2024. *See* ECF No. 26. In her Counterclaims, Ms. Starke alleges that Mr. Blaylock sexually assaulted her over the course of several years. *See* ECF No. 26-1, ¶¶ 1-2. Mr. Blaylock denies those allegations. ECF No. 27.

On June 18, 2024, Mr. Blaylock moved this Court for a Preservation Order requiring Ms. Starke to allow imaging of her personal electronic devices in order to preserve relevant information for later review, because of the ephemeral nature of electronic data. *See* ECF No. 41-1. In opposition, Ms. Starke swore in a declaration that as an attorney, she was "well aware of [her] duty to preserve evidence in [her] possession that may be relevant to this litigation[,]" and that she was "preserving all information contained on [her] electronic devices and hard drives." ECF No. 43-2, ¶ 9. On July 12, 2024, based in part on those representations, this Court denied Mr. Blaylock's motion, stating that "[a]s a party to this lawsuit, Starke already has a duty to preserve relevant data on her electronic devices. And as an attorney, Starke is certainly aware of her obligations and the potential penalties for violating them." ECF No. 46.

For nearly a year, Ms. Starke has thwarted Mr. Blaylock's attempts to conduct discovery targeted at the claims in his Complaint and Ms. Starke's Counterclaims.

3

On August 19, 2024, Mr. Blaylock served on Ms. Starke his First Set of Requests for Production containing twenty-five requests (ECF No. 57-1) (the "RFPs") and his First Set of Interrogatories containing twenty-five interrogatories (ECF No. 57-2) (the "Interrogatories," and collectively with the RFPs, Mr. Blaylock's "Initial Discovery Requests"). Ms. Starke's responses were due on September 18, 2024. However, based on Ms. Starke's representation that she was undergoing cancer treatment in Doha, Qatar, Mr. Blaylock and the Court agreed to extend the deadline to October 18, 2024. In a Minute Order on September 12, 2024, the Court noted that "[f]urther extension requests will be disfavored. And any further extension requests based on medical necessity must be supported by sufficient documentation, as explained in the prior status conference."

On October 16, 2024, two days before the expiration of the extended deadline, Ms. Starke again requested more time to respond to the Initial Discovery Requests, and made a motion to extend all deadlines, which the Court denied without prejudice for failing to meet-and-confer with Mr. Blaylock's counsel. *See* ECF Nos. 52, 53. Although she had not obtained an extension, Ms. Starke did not respond to the Initial Discovery Requests by October 18, 2024. Following a subsequent meet-and-confer, Ms. Starke's counsel agreed "to review Ms. Starke's communication devices/computer so we could establish proper ESI protocols for production and . . . make a good faith effort to initiate production to the best extent [he] could" by November 6, 2024. *See* ECF No. 54-1, at Ex. C.

On November 6, 2024, Ms. Starke did not produce any documents, but instead served untimely objections to the Initial Discovery Requests. In lieu of substantive responses, Ms. Starke repeatedly stated that she was "medically incapable of engaging in a diligent search and reasonable inquiry beyond the extent encompassed by information and documents previously provided." Ms.

4

Starke also attached to her responses two letters from Dr. Jiri Kubes. In a letter dated October 10, 2024, Dr. Kubes stated that Ms. Starke was diagnosed with stage 4 metastatic rectal cancer and was receiving proton therapy. He said that Ms. Starke's "significant physical weakness" prevented her from being deposed. In a November 3, 2024, letter also attached to the responses, Dr. Kubes stated that Ms. Starke could not sit in a chair at a computer because of her rectal and anal cancer. He said that Ms. Starke was "under enormous physical strain, duress" and that he "strongly recommend[ed] that we revisit the Electronic Stored Information (due to her agonizing and painful physical condition) in January . . . ."

Despite these contentions, Ms. Starke's Instagram posts told a different story. Her Instagram posts in September 2024 showed her in Qatar (where she says she was seeking cancer treatment) riding a camel, on a safari, on a swing at the B-Lounge bar and restaurant, and spending time at the beach. *See* Decl. of Sarika Andavolu dated January 7, 2025 (ECF No. 57) ("Andavolu Decl. I"), Exs. 1–4. In late October, while claiming medical incapacity, Ms. Starke gave two video tours of her hotel rooms in Frankfurt, Germany, and stated that she was exploring the city by "walk[ing] around with [her] son." *See, e.g.*, Andavolu Decl. I, Ex. 5. In November 2024, Ms. Starke posted photos of herself standing in a town square in Prague. *See* Andavolu Decl. I, Ex. 6. She also posted a video showing her "exercising" and her ability to "kick" while wearing a pair of jeans. *See* Andavolu Decl. I, Ex. 8.

On November 12, 2024, Mr. Blaylock brought Ms. Starke's failure to comply with her discovery obligations to the Court's attention. At the Court's request, Mr. Blaylock proposed to Ms. Starke an order for temporary relief that would halt the harm to Mr. Blaylock while the case deadlines were extended. Without explanation, Ms. Starke refused to consent to Mr. Blaylock's proposed requested relief. Accordingly, in a Minute Order on November 21, 2024, the Court

5

ordered Ms. Starke to respond substantively to Mr. Blaylock's Initial Discovery Requests by December 12, 2024.[1]

On December 12, 2024, Ms. Starke provided supplemental responses to Mr. Blaylock's Initial Discovery Requests. *See* ECF Nos. 57-9 & 57-10. These responses fell far short of Ms. Starke's discovery obligations under the Federal Rules and the Court's Orders. *See* Plaintiff's Opp. to Def's Mot. for Prot. Order (ECF No. 57). For example, she provided the same blanket response to every interrogatory: that she was "in no condition to meet requirements that she engage in a 'diligent search' nor [was] she in a position to participate in what is required for a 'reasonable inquiry' as to the information sought." Additionally, she failed to produce *any* responsive documents or provide contact information for *any* of the individuals she identified in her response to Mr. Blaylock's First Set of Interrogatories.

On December 13, 2024, Mr. Blaylock's counsel followed up with Ms. Starke's counsel regarding her failure to produce any documents. Ms. Starke's counsel responded on December 16, 2024, asking for a couple of days extension to begin providing rolling document productions, because Ms. Starke claimed that she had to undergo emergency surgery that day to reposition a port near her heart. Mr. Blaylock agreed to provide Ms. Starke until December 19, 2024, for Ms. Starke to start her rolling productions.

On December 19, 2024, Ms. Starke's counsel wrote in an email that Ms. Starke would once again not be producing any documents on a rolling basis, because the emergency surgery that was supposed to have occurred on December 16, 2024, had not yet occurred. According to Ms. Starke's counsel, Ms. Starke could not provide the contact information for the individuals identified in her

---

[1] The Court originally set Ms. Starke's deadline to respond to Mr. Blaylock's written discovery requests for December 5, 2024, but Ms. Starke's counsel requested an additional week based on his own illness, which the Court provided.

6

interrogatory responses, including her purported client, "Evgeny Bolotin" because "[r]ight now, [she] is in no position to do anything but prepare for a procedure to relocate a port that is too close to her heart." ECF No. 57-11. Once again, Ms. Starke's social media told a different story. *See* Andavolu Decl. I, Exs. 9–10.

On December 27, 2024, Ms. Starke provided a letter from Dr. Hernandez-Alejandro. claiming that Ms. Starke was too ill and weak to participate in discovery starting in January 2025 and until March 2025, and requested to stay this matter until March 2025. *See* Declaration of Sarika Andavolu dated May 15, 2025 ("Andavolu Decl. II"), Ex. 1. Ms. Starke did not provide any explanation as to why she had been unable to fulfill her discovery obligations to date. Notwithstanding her own doctor's opinion, on or around January 5, 2025, Ms. Starke posted pictures of herself on the ski slopes in Aspen, Colorado, where she had traveled to celebrate the New Year. *See* Andavolu Decl. I, Ex. 11.

On December 30, 2024, Ms. Starke filed a Motion for Protective Order and Modification of Scheduling Order Dates based upon medical emergency. *See* ECF No. 55. In her Motion and accompanying declaration, Ms. Starke stated that she was entitled to a protective order under Federal Rule of Civil Procedure 26(c) because she would be entering a clinical trial for treatment, needed surgery for her port catheter, and was "required to avoid stress and exertion in preparation for and during the clinical trial." *Id.* at 1.

On January 7, 2025, Mr. Blaylock opposed Ms. Starke's Motion for Protective Order, outlining all of the prior extensions of the discovery deadlines, and providing the Court with her social media posts that starkly contradicted her claims of medical incapacity. *See* ECF No. 57. On January 16, 2025, Ms. Starke filed papers stating that her social media posts were not what they

7

appeared, as she had a "team"[2] managing her account, and that her collection of documents that might be relevant to Mr. Blaylock's requests contained privileged communications with her clients, which neither she nor her counsel could review at that time. *See* ECF Nos. 60 & 61. On January 18, 2025, Mr. Blaylock responded to Ms. Starke's claims with evidence that she was flying around the country, attending public events and posting about them on social media. *See* ECF No. 62.

On January 21, 2025, during a status conference, this Court requested that Ms. Starke's doctor appear before the Court to answer questions related to Ms. Starke's medical status, and temporarily stayed discovery until January 31, 2025. On January 31, 2025, after a discussion with Ms. Starke's doctor and counsel for the parties, this Court once again continued the discovery deadlines in the case, to April 15, 2025, but noted that it was untenable for Ms. Starke to do everything she wanted to, except abide by a court ordered litigation schedule, and that any posts made by Ms. Starke on social media should be taken at face value.

On March 5, 2025, the parties reconvened for a status conference before this Court. During the conference, this Court inquired as to the status of the document collection and review, and counsel for Ms. Starke claimed that separate counsel had been retained to assist in the review of Ms. Starke's purportedly privileged communications with clients. He stated that due to Ms. Starke's chemotherapy treatment, he was unable to speak to her and requested a 10-day continuance to propose next steps. Counsel for Mr. Blaylock requested that, at a minimum, Ms. Starke produce the contact information for four individuals identified in Ms. Starke's responses to

---

[2] Ms. Starke's social media "team" appears to consist of one individual, her friend Jiří Novák, who at the time claimed in an unsworn letter to this Court that "there is no ongoing coordination between Ms. Petra Starke and [him] regarding the management of her social media." *See* Andavolu Decl. II, Ex. 2.

8

Mr. Blaylock's Interrogatories: Yarek Danielak, Evgeny Bolotin, Claudio Rocha, and Alfredo DeVilla. The Court set a status conference for March 17, 2025.

On March 16, 2025, Ms. Starke's counsel sent Mr. Blaylock's counsel a letter from Dr. Karel Pacak, dated March 10, 2025, stating that she was unable to participate in any form of discovery, because "due to the severity of her condition and the effects of the treatment, she has experienced significant cognitive impairment." Andavolu Decl. II, Ex. 3. Counsel for Ms. Starke instead proposed that they would insert the "call of the question" in each of Mr. Blaylock's RFPs into Ms. Starke's email search bar and produce all non-privileged communications, on a rolling basis, every 30 days.

On March 17, 2025, counsel for Ms. Starke presented the same plan to the Court, and counsel for Mr. Blaylock requested that the Court enter an order reflecting the parties' agreement to ensure compliance. Under the assumption that Mr. Blaylock would receive documents within a month's time, the Court scheduled the next conference to take place on April 18, 2025.

On April 9, 2025, the Court entered an Order requiring Ms. Starke to begin production of documents responsive to Mr. Blaylock's RFPs no later than April 16, 2025. *See* ECF No. 64.

On April 16, 2025, Ms. Starke and her counsel failed to produce any documents. Indeed, it was only *after* counsel for Mr. Blaylock reached out on April 17, 2025, inquiring about the status of the document productions, that Ms. Starke's counsel stated that he was ill and unable to review the documents, but that he would provide them over the weekend. *See* Andavolu Decl. II, Ex. 4. On April 18, 2025, the parties once again met before this Court. This Court stated that one way or another, it expected significant discovery to be under way before the next conference on April 29, 2025.

Ms. Starke did not produce any documents before the April 29, 2025 conference. Instead,

9

at the conference Ms. Starke's counsel stated that Ms. Starke had identified 3,000 to 4,000 pages of business and medical records, but that he had been unable to connect with her to review and start the production process. This Court stated that it had previously made clear that it was unreasonable for Ms. Starke to be the only one to do a privilege review of the documents she has in her possession, and that this Court was frustrated that review and production had not yet been made.

On May 1, 2025, this Court entered an Order requiring Ms. Starke to *complete her document production by May 12, 2025* (ECF No. 65) (the "Discovery Order"). The Discovery Order also stated that *"[i]f Defendant has not met the production deadline, Plaintiff should propose remedies that may include sanctions or contempt."* *Id.* at 2 (emphasis added).

Notwithstanding the Court's Order to *complete* document production by May 12, 2025, on that date Ms. Starke made only a small production, consisting of 128 pages of medical records related to her cancer diagnosis and treatment, and seven pages of photographs and doctors' letters she had already provided to this Court. *See* Andavolu Decl. II, ¶ 7. At best, these documents were only responsive to one of Mr. Blaylock's twenty-five RFPs, Request No. 10, which called for the production of documents supporting Ms. Starke's allegations that Mr. Blaylock caused or exacerbated any of her health conditions, including her cancer. *See* ECF No. 57-1 at 7. She also produced two videos ("Starke Video 1" and "Starke Video 2"), which were edited versions of the same Starke Video that was previously circulated to Mr. Blaylock, his family and friends. *See* Andavolu Decl. II, ¶ 8. These videos were at best responsive to only one of Mr. Blaylock's RFPs, Request No. 6, which called for the production of "[a]ll documents and communications related to the Starke Video." *See* ECF No. 57-1 at 6. Ms. Starke did not provide any documents responsive to Mr. Blaylock's RFP Nos. 1–5, 7–9, or 11–25. In violation of this Court's Discovery Order that

10

Ms. Starke *complete* her document production by May 12, Ms. Starke instead provided supplemental responses to most of Mr. Blaylock's RFPs stating that "discovery is continuing." *See, e.g.*, Andavolu Decl. II, Ex. 5, Responses to Request Nos. 11, 13–22, 24–25.

On May 13, 2025, counsel for Mr. Blaylock contacted Ms. Starke's counsel inquiring as to whether the production constituted the entirety of Ms. Starke's discovery, as required by the Discovery Order. Ms. Starke's counsel maintained that they had complied with the Discovery Order because they provided "substantial responses" to Mr. Blaylock's RFPs. *See* Andavolu Decl. II, Ex. 6.

On May 14, 2025, counsel for Mr. Blaylock notified Ms. Starke's counsel that Mr. Blaylock would be moving for sanctions given Ms. Starke's failure to complete document production by May 12. *See* ECF No. 65 at 2. On May 15, 2025, this Court informed Mr. Blaylock that he was welcome to file a motion for sanctions, and this Motion followed. For the reasons set forth below, the Motion should be granted.

## **ARGUMENT**

Federal courts have inherent authority to enforce compliance with their orders. *See Unitronics (1989) (RG) Ltd. v. Gharb*, 85 F. Supp. 3d 133 (D.D.C. 2015); *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) ("'The power to punish for contempts is inherent in all courts; its existence is essential to . . . the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice.'") (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1873)). Federal Rule of Civil Procedure 37(b)(2) specifically allows a district court to sanction parties for failing to comply with discovery orders. Such sanctions may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . . striking pleadings in whole or in part, . . .

11

dismissing the action or proceeding in whole or in part, . . . or treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *See* Fed. R. Civ. P. 37(b)(2). Given her blatant non-compliance with the Discovery Order, this Court should impose sanctions on Ms. Starke pursuant to Fed. R. Civ. P. 37. Mr. Blaylock specifically requests: (i) that Ms. Starke be held in contempt; (ii) that her Counterclaims be dismissed with prejudice, or in the alternative, that she be precluded from offering any evidence to support them, including her own testimony; and (iii) that Mr. Blaylock be awarded his reasonable attorneys' fees expended in pursuing Ms. Starke's compliance with her discovery obligations in this case.

      First, Ms. Starke's cavalier defiance of the Court's Discovery Order should be met with an order holding her in contempt. *See Am. Rivers v. United States Army Corps of Eng'rs*, 274 F. Supp. 2d 62, 70 (D.D.C. 2003) ("If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority and to compel compliance with lawfully issued directives."). In seeking sanctions for a finding of contempt of court, the moving party must establish by clear and convincing evidence that: "(1) the court's order was reasonably clear and specific; and (2) the opposing party failed to comply." *Gharb*, 85 F. Supp. 3d 133 at 139 (citing *Broderick*, 437 F.3d at 1234).

      Both elements are met here. Ms. Starke was served with the Initial Discovery Requests on August 19, 2024. Since then, she has consistently failed to produce documents responsive to Mr. Blaylock's RFPs. After nearly nine months of delay by Ms. Starke, this Court entered the Discovery Order on May 1, 2025, which clearly stated that "Defendant will *complete* document production by May 12, 2025." ECF No. 65 (emphasis added). On May 12, 2025, however, Ms. Starke produced only 135 pages of medical records, doctors' letters, and photographs, and two

edited videos. The documents were only responsive, at best, to one of Mr. Blaylock's twenty-five requests for production, Request No 10. ECF No. 57-1, at 7.

Moreover, Mr. Blaylock knows that Ms. Starke has far more than 135 documents in her possession that are relevant to the claims in this litigation, because she herself submitted a sworn affidavit to this Court where she represented that she "took screenshots" of messages on Mr. Blaylock's electronic devices, and that she has "several thousands" of those images. ECF No. 15-1 ¶¶ 12, 16. In addition, Ms. Starke's counsel represented to this Court that she had identified 3,000 to 4,000 pages of potentially responsive documents. Despite clearly possessing responsive documents, Ms. Starke willfully failed to produce them: a flagrant violation of the Court's Discovery Order that warrants her being held in contempt.

Second, Ms. Starke's Counterclaims should be dismissed with prejudice as a sanction for her misconduct. Dismissal is warranted if: (i) the other party "has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case"; (ii) the "misconduct has put 'an intolerable burden on a district court by requiring the court to modify its own docket and operations in order to accommodate the delay;'" and (iii) the misconduct is "disrespectful to the court" and should be deterred. *Wilson v. On the Rise Enters., LLC*, 2019 U.S. Dist. LEXIS 15040, *10-11 (D.D.C. Jan. 30, 2019) (internal citations omitted). Here too, all of these elements are met.

Mr. Blaylock has been unfairly prejudiced by Ms. Starke's misconduct. Mr. Blaylock filed this action in December of 2023 to stop Ms. Starke's attacks against him and his reputation. For over a year, Ms. Starke has repeatedly asked for extensions and caused delays that have left Mr. Blaylock to endure ongoing harm without any end in sight. Additionally, Ms. Starke has asserted Counterclaims against Mr. Blaylock, making serious allegations against him, while refusing to

provide him with the documents and information he has requested. Without this discovery, Mr. Blaylock's ability to prosecute his own claims, and defend against the false claims brought against him, has been severely limited. *See United States Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 130 (D.D.C. 2016) ("The defendants' failure to respond to the SEC's requests for interrogatories and production of documents, served on July 13, 2015, and ultimately due on November 16, 2015, has hampered the SEC's ability to present its case on the merits.").

Moreover, Mr. Blaylock and this Court have patiently endured Ms. Starke's repeated requests to reschedule and postpone her obligations, which has effectively halted this case and greatly undermined judicial efficiency. *See Wilson*, 2019 U.S. Dist. LEXIS 15040, at *12 (holding that dismissal was warranted in part because "the plaintiff's absence has brought this case to a halt."). Finally, Ms. Starke's conduct has certainly been "disrespectful to the court" and must be deterred. Despite Ms. Starke's own admissions that she has thousands of documents responsive to Mr. Blaylock's requests, and her counsel's corroboration of that fact, Ms. Starke has willfully disregarded the Court's Discovery Order by failing to produce them by May 12, 2025. *See* ECF No. 65.

Third, and alternatively, if the Court is unwilling to dismiss Ms. Starke's Counterclaims in whole, the fundamental principles of fairness require that the Court at least preclude Ms. Starke from offering evidence (including her own testimony) on any issue where she has failed to produce documents or information, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). *See Klayman v. Judicial Watch, Inc.*, 256 F.R.D. 258 (D.D.C. 2009) (finding that sanctions barring plaintiff from testifying to or admitting any evidence in support of his damage claims or his alleged defenses to Defendants' counterclaims are appropriate given "repeated and willful refusal to comply with this

Court's discovery orders and the prejudice it has caused to the opposing parties and the judicial system."). Ms. Starke's unwillingness to produce documents to Mr. Blaylock that undermine her claims against him, or that bolster his claims against her, should not be rewarded with the opportunity to submit evidence or testimony that supports her positions. The Motion should be granted.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Mr. Blaylock respectfully requests that the Court enter an Order:

i. Holding Ms. Starke in contempt;

ii. Dismissing Ms. Starke's counterclaims filed at ECF No. 26-1 with prejudice; or in the alternative, precluding Ms. Starke from entering any evidence, including but not limited to her own testimony, on any issue where she has failed to produce documents or information;

iii. Awarding Mr. Blaylock all of his reasonable attorneys' fees in connection with pursuing this Motion and requiring Ms. Starke to pay all of those attorneys' fees within fourteen (14) days from the so-ordering of Mr. Blaylock's request for such an award; and

iv. Further awarding Mr. Blaylock any such other relief that the Court deems just and proper.

Date: May 15, 2025

Respectfully submitted,

*/s/ Jessie F. Beeber*

Jessie F. Beeber (admitted *pro hac vice)*
Sarika Andavolu (admitted *pro hac vice*)
Venable LLP
151 West 42nd Street, 49th Floor
New York, NY 10036

15

(212) 307-5500 Telephone
(212) 307-5598 Fax

David A. Levie, Esq. (D.C. Bar No. 1034550)
Venable LLP
600 Massachusetts Avenue, N.W.
Washington, DC  20001
dalevie@venable.com
(202) 344-4319 Telephone
(202) 344-8300 Fax

William J. Briggs II (admitted *pro hac vice*)
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900 Telephone
(310) 229-9901 Fax

*Attorneys for Plaintiff Dan M. Blaylock*