UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAN M. BLAYLOCK**, <br><br> Plaintiff, <br><br> v. <br><br> **PETRA SMELTZER STARKE**, <br><br> Defendant. | Case No. 1:23-cv-03606 (TNM) |

# MEMORANDUM ORDER

Plaintiff Dan Blaylock moves this Court to sanction Defendant Petra Starke for flouting a discovery schedule. The Court held its initial status conference setting discovery deadlines in July 2024. Those deadlines have been distended beyond recognition. The Court most recently ordered Starke to complete document production by May 12, 2025. Blaylock asserts that Starke did not meet that deadline either. The Court agrees. But because severe sanctions are a last resort, the Court imposes more moderate sanctions of finding her in civil contempt and requiring her to pay Blaylock's attorneys' fees for briefing the sanctions motion.

## I.

The procedural history here is tedious. A thorough recounting is in order, though, to explain the Court's reason for imposing sanctions.

The Court first set a discovery schedule over a year ago. Min. Entry July 19, 2024 (setting discovery deadlines to conclude by March 2025). A month later, the Court granted a joint extension request for the first document production and interrogatory deadline, bumping it from September to October. Min. Order Sept. 12, 2024 (also shifting all subsequent discovery deadlines accordingly). The parties had requested this extension because Starke was undergoing

cancer treatment in Qatar.  Joint Mot. Extend Order Deadlines, ECF No. 51, at 1–2.  The Court directed that any "[f]urther extension requests based on medical necessity must be supported by sufficient documentation."  Min. Order Sept. 12, 2024.

October came and went without production:  Starke asked for another extension, the Court asked the parties to meet-and-confer, then Blaylock peppered Starke with requests for production throughout late October.  Mot. Extension of Time, ECF No. 52; Response Mot. Extension of Time, ECF No. 53; Min. Order Oct. 18, 2024; Opp. Mot. Protective Order, ECF No. 57, at 8 (citing Exs. C–F).  Mid-November brought another defense extension request alongside two medical letters and a list of boilerplate production objections largely based on medical incapacity.  Mot. Extension of Time, ECF No. 54; Mot. Extension of Time, ECF No. 54-1, Ex. A at 7, Ex. G at 18; Opp. Mot. Protective Order, ECF No. 57-7, Ex. G at 1–28.

All the while, Blaylock said that he was enduring ongoing harm from Starke's "false accusations" that were still plastered across the internet.  Compl., ECF No. 1, ¶¶ 1–2; Opp. Mot. Protective Order, ECF No. 57, at 5.  To summarize:  After the two ended a romantic relationship in 2022, Blaylock alleges that Starke circulated a video interview via email to Blaylock's family and friends accusing him of sexually assaulting her, then posted similar information on a specially created website for this purpose.  Compl. ¶ 2; Compl. Ex. F, ECF No. 1-6, at 2.  Blaylock says that the site contains nude photos of him alongside other texts and images that Starke stole from his personal cell phone.  Opp. Mot. Protective Order at 6–7.

When production was still dragging in mid-November, the Court asked the parties to jointly propose a temporary restraining order that would mitigate Blaylock's harm while giving Starke the time necessary for cancer treatment.  Hr'g. Tr. Nov. 18, 2025, at 5:22–6:17.  Though both parties at first seemed amenable, they could not reach agreement.  Hr'g Tr. Nov. 21, 2025,

at 2:20–3:6.  Two status conferences and a round of briefing later, the Court made "the following findings" about the situation:  "First, having reviewed the evidence," "the Defendant [was] suffering from cancer" and "need[ed] medical treatment."  Hr'g Tr. Nov. 21 at 3:7–11.  "At the same time, [the Court] credit[ed] the Plaintiff's allegations that [Starke was] able to engage in a lot of other activities during her treatment, that she[ was] not hospital bound, that she[ was] going on camel rides, doing walking tours of cities and [was] keeping up a pretty active social media presence.  In short, the [Court] discredit[ed] any allegation that [Starke was] completely unable to participate in discovery during this time.  [The Court] just [didn't] think the record support[ed] that."  Hr'g Tr. Nov. 21 at 3:12–20.

To the contrary, the Court "ma[de] a finding that Starke [was] able to[,] with the assistance of excellent counsel[,] provide appropriate responses to the interrogatories and document requests."  Hr'g Tr. Nov. 21 at 8:11–14.  The Court rejected the suggestion that because Starke is an attorney, she had to be more intimately involved with privilege review than a normal client would.  Hr'g Tr. Nov. 21 at 8:15–9:2.  Given the Court's "findings about her abilities," the Court expected her to participate as fully as a normal represented defendant.  Hr'g Tr. Nov. 21 at 8:15–9:2.

Accordingly, the Court ordered Starke to respond to Blaylock's first set of requests for production and interrogatories—with more than medical-incapacity objections—by December 12.  Hr'g Tr. Nov. 21 at 6:7–10:5.  The Court also expected Starke to sit for a truncated, "maybe one-hour deposition," after that date and reset all other discovery deadlines.  Hr'g Tr. Nov. 21 at 4:19–5:5, 10:10–12:13.  In mid-December, defense again submitted a very similar list of medical-incapacity production objections with no documents.  Opp. Mot. Protective Order, Ex. I, at 1–33.  Starke also asked opposing counsel for another delay because she had emergency

3

surgery scheduled. Opp. Mot. Protective Order at 12, Ex. K at 2. Opposing counsel, again highlighting Starke's social media posts about travel and holiday parties, did not agree. Opp. Mot. Protective Order at 12–13 (citing Andavolu Decl., ECF Nos. 57-22–57-23, Exs. 9–10). Starke responded with a motion for a protective order from discovery until March 2025 so that she could participate in a clinical trial at the National Cancer Institute. Mot. Protective Order, ECF No. 55, at 1–8, Ex. A. Blaylock filed a cross-motion to compel discovery. Cross-Motion to Compel, ECF No. 59 (incorporated into Opp. Mot. Protective Order, ECF No. 57).

The Court held two more status conferences and spoke with Starke's physician off-the-record to fully understand her condition during the clinical trial. Hr'g Tr. Jan. 21 2025, at 9:8–22. The Court decided to stay discovery from Starke until April 2025, allowing any third-party discovery to continue in the interim. Hr'g Tr. Jan. 31, 2025, at 9:22–10:12. In so doing, though, the Court gave Starke two warnings. First, Starke should be prepared for counsel to conduct privilege review for her records and produce documents on her behalf; otherwise, the Court would "impos[e] sanctions." Hr'g Tr. Jan. 31 at 6:16–7:2. The Court also remained open to receiving updates about Starke's social media activity if it continued while she was in the clinical trial. Hr'g Tr. Jan. 31 at 7:16–9:4. Starke maintained that a social media team posted photos in her absence. Hr'g Tr. Jan. 31 at 8:13–18. But the Court agreed with Blaylock that "the position that she can do everything she wants to except for responding to a court-ordered litigation schedule is not going to be tenable." Hr'g Tr. Jan. 31 at 9:5–12.

During a check-in conference on March 5, defense stated that separate counsel had been retained to review Starke's privileged client communications before production began in April. Hr'g Tr. March 5, 2025 at 4:15–5:7. The Court told counsel that he "should assume this [was] . . . [his] last chance to come up with a plan for review of any potentially responsive documents

4

for the document production." Hr'g Tr. March 5 at 7:1–6. In early April, the parties filed a joint proposed Order scheduling discovery to begin in mid-April. Proposed Order, ECF No. 63. The Court granted their request. Order, ECF No. 64.

In mid-April, the Court met with the parties again to ensure that production had begun. No progress had been made because defense counsel was ill. Hr'g Tr. Apr. 18, 2025, at 2:17–4:5. The Court rescheduled for the end of the month. Min. Entry, Apr. 29, 2025. When the parties reconvened, defense had produced only four individuals' contact information. Hr'g Tr. Apr. 29, 2025, at 4:4–9. Starke had identified "about 3,000 to 4,000 pages of documents," including both medical and business records, to begin rolling production. Hr'g Tr. Apr. 29 at 4:10–19. But none had been produced yet. Hr'g Tr. Apr. 29 at 4:9–6:2. Counsel said that he had "tried as much as [he could] to date to try to get [Starke] to start this production." Hr'g Tr. Apr. 29 at 4:2–3. Defense counsel also reported that the privilege-review counsel had not worked with Starke because she "was physically unable" to meet. Hr'g Tr. Apr. 29 at 5:6–14.

The Court directed Starke to produce all her identified responsive records to Blaylock by May 12. Hr'g Tr. Apr. 29 at 9:2–6. If privilege review had not occurred by that point, Starke would waive it or she could designate materials "for attorneys' eyes only." Hr'g Tr. Apr. 29 at 9:7–16. Defense counsel asked whether he could just produce the 100 pages he possessed, with the rest coming in rolling productions; the Court rejected that proposal. Hr'g Tr. Apr. 29 at 10:7–11:12. The Court wanted to "be very clear that May 12th is for all document production, not just the 100 pages or so that [defense counsel] currently has," and that a privilege log should be included if review had occurred. Hr'g Tr. Apr. 29 at 11:6–12. Another discovery conference would follow on May 16 to verify production. Order, ECF No. 65, at 2.

5

On May 12, Starke produced 128 pages of medical records related to her cancer diagnosis and treatment, seven pages of photographs and doctors' letters that she had already submitted to the Court, and two videos that were edited versions of the interview that Starke had already "circulated to Blaylock, his family and friends." Mot. Sanctions, ECF No. 66-8, at 10; Decl. of Sarika Andavolu, ECF No. 66-1, ¶ 7. Then, on May 16, before the follow-up discovery conference, Starke made another small production of 27 pages, including eight redundant pages with her previous production and 19 pages of "photos and text messages between Blaylock and another individual." Reply Mot. Sanctions, Third Decl. of Sarika Andavolu, ECF No. 70-1 ¶¶ 2–5.

Defense counsel represented that these two productions constituted "in the 90th percentile of the producible documents [Starke] has." Hr'g Tr. May 16, 2025, at 3:10–16. The Court asked about the discrepancy between the production and defense's claims about thousands of responsive documents. Hr'g Tr. May 16 at 6:4–9, 8:18–20. Starke responded that there had been thousands to review but only a few hundred to produce because only those "relate[d] to Mr. Blaylock specifically." Hr'g Tr. May 16 at 6:12–23, 13:15–19. Defense counsel also claimed that the high estimates came from the medical documents in her online charts, over which she did not have control. Hr'g Tr. May 16 at 8–22. Blaylock responded that he knew she possessed, at least, text communications between them, and that none of those had been produced as requested; this was just one category where the production was incomplete. Hr'g Tr. May 16 at 12:6–13:11. Defense maintained that "it's been a rolling production." Hr'g Tr. May 16 at 3:17–20.

At the Court's invitation, Blaylock filed a motion requesting the following sanctions: civil contempt; counterclaim dismissal with prejudice; preclusion of further evidence in support

of her counterclaims or her defense to Blaylock's claims; and payment of Blaylock's attorneys' fees for briefing the sanctions motion. Mot. Sanctions, ECF No. 66, at 1. Starke's last production arrived on June 2, 2025, containing "thirty-six pages of collaged screenshots of various text messages." Reply Mot. Sanctions, Third Andavolu Decl. ¶¶ 6–7. In total, Starke produced 198 pages.

The Motion for Sanctions and the motions concerning discovery are ripe for consideration. ECF Nos. 66–71 (Motion for Sanctions); ECF Nos. 55–62 (Motion for Protective Order and Cross-Motion to Compel Discovery). This Court has subject-matter jurisdiction under 28 U.S.C. § 1331.

## II.

"If a party" "fails to obey an order to provide or permit discovery," "the court where the action is pending may issue further just orders" to sanction the offending party. Fed. R. Civ. P. 37(b)(2). "[A] party moving to hold another party in contempt must demonstrate by clear and convincing evidence that the alleged contemnor *violated the court's prior order*." *Food Lion, Inc. v. United Food & Com. Workers Intern. Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997) (emphasis original) (concerning contempt under Fed. R. Civ. P. 45 governing subpoenas).

Upon finding clear and convincing evidence of a violation, a court may impose discovery sanctions including, among other things, "striking pleadings in whole or in part," "prohibiting the disobedient party from supporting or opposing designated claims or defenses," "dismissing the action," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey." Fed. R. Civ. P. 37(b)(2)(A)(ii)–(iii), (v)–(vii). "Instead of or in addition to the orders above, the court must order the disobedient party" "to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

"The central requirement of Rule 37 is that any sanction must be just, which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996) (cleaned up). District courts have "broad discretion" to impose sanctions for discovery violations. *Id.* at 807. Indeed, federal courts possess the inherent authority to manage their own affairs to achieve the orderly and expeditious disposition of cases, so long as any sanctions are compensatory, not punitive, in nature. *Service Empl. Int'l Union Loc. 32BJ v. Preeminent Prot. Servs.*, 415 F. Supp. 3d 29, 33 (D.D.C. 2019).

### III.

The Court must answer two questions: Did Starke violate its Order demanding that document production conclude by May 12, 2025? If so, what sanctions are just?

### A.

The Order required Starke to "produce the documents that have been identified as responsive to the Plaintiff's requests" by May 12. Order, ECF No. 65, at 1–2. Defense counsel represented during a discovery conference that Starke had identified 3,000–4,000 responsive documents. Mot. Sanctions, ECF No. 66-8, at 9–10; Hr'g Tr. Apr. 29 at 4:10–19. Starke also had stated in an affidavit that she had thousands of images supporting her claims about Blaylock. Opp. Mot. File Under Seal, ECF No. 15-1 ¶ 16. Her less-than-200 pages produced by May 12 were, at best, responsive to six of the 25 requests for production—though Blaylock claims that they really only responded to one. Mot. Sanctions Ex. 5, ECF No. 66-6, at 2–28 (showing

8

defense listing responses to Requests for Production #6, #7, #10, #12, #19, #23); Mot. Sanctions, ECF No. 66–8, at 10.  Defense did not even list its production page numbers as responsive to the other 19 requests for production, instead repeating a boilerplate objection.  Mot. Sanctions Ex. 5, ECF No. 66-6, at 2–28.  And defense produced no text conversations between Starke and Blaylock, though Blaylock represented that many existed.  Hr'g Tr. May 16 at 12:6–13:11.

 If there was any doubt that Starke's production was incomplete, defense affirmatively dispelled it.  After the May 12 deadline passed, defense counsel admitted at the May 16 status conference that he had produced only 90% of producible documents.  Hr'g Tr. May 16 at 3:10–16.  And he continued to characterize their production as "rolling" even though the Court had specifically required it to be complete.  Hr'g Tr. May 16 at 3:17–20.  Recall that this would not be the first time that Starke has missed a court-ordered production deadline.  *See supra* Part I.

 Even if those representations did not confirm her violation, the latter two productions on May 16 and June 2 do.  Starke claims that she was merely disclosing supplemental information as required by Federal Rule of Civil Procedure 26(e).  That rule requires parties who have made discovery disclosures to "supplement or correct" those disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).  "[S]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report *based upon information that was not available* at the time of the initial disclosure." *St. Paul Mercury Ins. v. Capitol Sprinkler Inspection, Inc.*, 2007 WL 1589495, at *9 (D.D.C. June 1, 2007) (emphasis original), *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217 (D.C. Cir. 2011).

 Starke has not explained why these two productions were "new information" that had been "gathered" between May 12 and June 2.  Opp. Mot. Sanctions, ECF No. 67, at 2.  Mainly,

9

Starke claims that she had to engage in "rolling" production because of her battle with cancer, not because she discovered 55 more pages of photos and text messages. *Id.* at 2–3. To be clear, for Starke to have "learn[ed]" about these documents between May 12 and June 2, Fed. R. Civ. P. 26(e)(1)(A), she would have had to access Blaylock's physical cell phone to obtain texts between Blaylock and another individual, despite the fractious litigation between the two. Third Andavolu Decl. ¶¶ 2–5 (swearing that the later productions were mainly text messages, including a conversation between Blaylock and another individual). Any other text conversations would have to be dated between May 12 and June 2, 2025. Starke makes no such representation about either possibility in her opposition to the motion for sanctions. Opp. Mot. Sanctions at 2–3. "[Rule 26] imposes a duty to supplement incorrect or incomplete information[;] it does not, however, bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline . . . ." *Dag Enters. Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005); *accord Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 499–500 (9th Cir. 2009). Starke is attempting to accomplish the latter.

In sum, Starke violated the Court's Order requiring document production to be completed by May 12, 2025. Order, ECF No. 65, at 1–2. Blaylock has carried his burden to show by "clear and convincing evidence" that Starke violated the Order. *Food Lion, Inc.*, 103 F.3d at 1016.

## B.

The Court next considers just sanctions for Starke's violation. Recall that courts have an array of available sanctions for discovery violations, including "default judgment," "treating as contempt of court the failure to obey," and "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii). Remember also that "[t]he central requirement of Rule 37 is that any sanction must be just, which requires in cases involving severe sanctions that the district

10

court consider whether lesser sanctions would be more appropriate for the particular violation." *Bonds*, 93 F.3d at 808.

The Court has considered and rejected severe sanctions. "[T]he harshest sanction[s] of dismissal of the action," "default judgment, "or preclusion of evidence, which is tantamount to dismissal," should be awarded only upon a finding of "willful bad faith." *Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001). "[D]efault judgment must be a sanction of last resort, to be used only when less onerous methods . . . will be ineffective or obviously futile." *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). Given that this is the Court's first consideration of sanctions, it is prudent to avoid such measures at this time despite Blaylock's requests. *See Walls v. Paulson*, 250 F.R.D. 48, 54 (D.D.C. 2008) ("[D]ismissal of a lawsuit never heard on its merits is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions.").

The Court chooses this course even though Blaylock has experienced prejudice from the discovery delay. "[P]rejudice to the other party" is one of "three justifications for the imposition of defaults or dismissals as sanctions for misconduct." *See Butera*, 235 F.3d at 661. Recall that throughout over a year of discovery delays, the original subject of Blaylock's suit—allegedly defamatory content posted on the internet—has remained live and publicly accessible. *See supra* Part I. He claims that his harms continue each day that the grave accusations remain viewable. Opp. Mot. Protective Order at 6. There is also an argument that the other two justifications for default or dismissal are present as well. *Butera*, 235 F.3d at 661 (listing (2) "prejudice to the judicial system" when the district court "modif[ies] its own docket" to "accommodate the delay"

and (3) "the need to sanction conduct that is disrespectful to the court" (cleaned up)). Still, the Court exercises caution before resorting to the harsher category of sanctions.

Accordingly, for now, the Court holds Starke in civil contempt. Fed. R. Civ. P. 37(b)(2)(A)(vii). Civil contempt will lie if the party has "violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). The Court's Order was clear and unambiguous that Starke should "produce the documents that have been identified as responsive to the Plaintiff's requests." Order, ECF No. 65, at 1–2. Blaylock had submitted requests for production several times and Starke had already objected to the same requests; they had not changed. *E.g.*, Mot. Sanctions Ex. 5, ECF No. 66-6, at 2–29; Opp. Mot. Compel, ECF No. 57-9 Ex. I, at 1–23. As discussed above, Blaylock has shown by clear and convincing evidence that Starke did not produce all the documents she had previously represented were in her possession, or even documents responsive to all the requests for production. *See supra* Part III.A. The D.C. Circuit has affirmed a similar finding of contempt when a party did not search all its off-site files within the time specified in the discovery order, searching a few of them after the fact. *Food Lion, Inc.*, 103 F.3d at 1018 (so holding under Fed. R. Civ. P. 45). The Circuit so held even though the company had properly searched its indexing system because it was on notice that the system had flaws. *Id.* at 1019.

Starke argues that she should escape civil contempt because of her "good faith substantial compliance." Opp. Mot. Sanctions at 3. But the D.C. Circuit has been clear that "a finding of bad faith on the part of the contemnor is *not* required. Indeed, the law is clear in this circuit that the contemnor's failure to comply with the court decree need not be intentional." *Food Lion, Inc.*, 103 F.3d at 1016. "[G]ood faith is not entirely irrelevant to the ultimate determination of

contempt," but it is uncertain whether the defense "survives in this circuit." *Id.* at 1017. So it is unlikely that this defense is any bulwark against civil contempt.[1]

Even if the good faith defense does survive, the "burden of proving good faith and substantial compliance is on the party asserting the defense, and [Starke] has failed to meet that burden in this case." *Food Lion*, 103 F.3d at 1017. To carry such a burden, a party must show that it "took all reasonable steps within its power to comply with the court's order." *Id.* Starke's briefing makes broad gestures to her health struggles as justification for failing to comply with discovery. Opp. Mot. Sanctions at 2–3.

But recall that the Court had worked with defense counsel for months before May to ensure that Starke's counsel could conduct a privilege review and make productions in her absence. *See supra* Part I. The Court reviewed medical records, spoke with her doctor, and emphasized repeatedly that Starke was not the only person who could manage document production. *Id.* The Court made appropriate accommodations for more physical tasks like a personal deposition. *Id.* And the Court did all of this despite persuasive evidence from social media that Starke was overstating her medical incapacity to the Court while riding camels, exercising, and wandering abroad on foot. *Id.* Ultimately, defense makes no argument at all in its briefing that it tried to take reasonable steps to have counsel meet the production deadline for Starke while she underwent treatment. Opp. Mot. Sanctions at 1–6. Defense counsel's brief overture during the late-April status conference to failed meetings between Starke and privilege review counsel do not adequately explain why months of planning and promising the Court about a production plan were stymied at the last minute. Hr'g Tr. Apr. 29 at 5:6–14.

---

[1] *Food Lion* so held for civil contempt under Federal Rule of Civil Procedure 45, which textually contemplates "adequate excuse" for failing to respond to a subpoena. Fed. R. Civ. P. 45(g). This conclusion would apply, then, with greater force to Rule 37, which only mentions similar excuse in the attorneys' fees sanction and omits it for all other sanctions. Fed. R. Civ. P. 37(b)(2)(A), (C).

The question remains what civil contempt sanctions should be levied.  Civil contempt must be remedial, not punitive, in purpose.  *In re Fannie Mae Secs. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009).  So contempt sanctions "must be calibrated to coerce compliance or compensate a complainant for losses sustained." *Id.*

Accordingly, the Court looks to compensate Blaylock for some of his injury from this unjustified discovery delay and ensure the delay will end quickly.  The Court will require Starke to certify under penalty of perjury that all discovery documents have been produced within one week of the date of this Order.  That includes both documents supporting her counterclaims and those Blaylock has requested several times to support his claims.  Failure to comply will result in a $1,000 fine per day until she certifies that production is complete.  *See, e.g.*, *United States v. Travers*, 1989 WL 7363, at *1 (D.D.C. Jan. 17, 1989) (imposing a $1,000 per day fine for civil contempt until the sanction achieved compliance with a court order).

Though Blaylock did not formally seek more production, opting instead for sanctions, and even though Starke's counsel represented that production was 90% complete, the Court chooses to give Starke one last chance to support her counterclaims and defense before ending document production.  Hr'g Tr. May 16 at 15:21–25.  But Starke *will* be prohibited from introducing any evidence that was not properly produced within one week of the date of this Order.  All these sanctions are designed to bring Starke into compliance with the discovery process rather than accomplish a punitive purpose.

Finally, the Court awards Blaylock reasonable attorneys' fees required to brief the motion for sanctions.  Like civil contempt, "monetary sanctions are considered to be relatively mild given the spectrum of Rule 37's arsenal, and thus may be awarded in the absence of bad faith." *Quadrozzi v. City of New York*, 127 F.R.D. 63, 74 (S.D.N.Y. 1989).  More, the federal rule

requires courts to impose attorneys' fees if they impose any of the other discovery sanctions in Rule 37(b)(2), and the discovery failure was not substantially justified. Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to the orders above, the court *must* order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure . . . .") (emphasis added). For the reasons already enumerated, the Court does not find that Starke's failure to meet production deadlines was substantially justified.

All monetary sanctions will be levied against Starke rather than her attorney because there is no evidence before the Court of attorney wrongdoing. *See Bolger v. District of Columbia*, 248 F.R.D. 339, 346 (D.D.C. 2008) ("Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so.")

## IV.

For all these reasons, the Court holds Defendant in CIVIL CONTEMPT OF COURT. Fed. R. Civ. P. 37(b)(2)(A)(vii). Accordingly, the Court will GRANT IN PART Plaintiff's [66] Motion for Sanctions. Defendant is ORDERED to pay Plaintiff's reasonable attorneys' fees related to this motion. The Court also GRANTS Plaintiff's [59] Cross-Motion to Compel Discovery. Defendant is ORDERED to complete all document production within one week of today's date and to certify under penalty of perjury that she has done so. Defendant's [55] Motion for Protective Order is DENIED as moot because it sought protection from discovery until March 2025.

**SO ORDERED.**

Dated: September 29, 2025                                   TREVOR N. McFADDEN, U.S.D.J.