**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAN M. BLAYLOCK,<br><br>Plaintiff,<br><br>- against -<br><br>JIRI NOVAK, *et al.*,<br><br>Defendants. | Case No.: 1:23-CV-3606-TNM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO SUBSTITUTE GEORGE LAWRENCE STARKE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PETRA SMELTZER STARKE, DECEASED, FOR DEFENDANT PETRA SMELTZER STARKE**

**STATEMENT OF RELEVANT FACTS**

Plaintiff commenced this action on December 4, 2023. The operative First Amended Complaint asserts multiple claims against Ms. Starke and her co-defendant, Jiri Novak, arising from their alleged campaign to publish and disseminate false, private, and intimate information about Plaintiff, including claims for invasion of privacy, intentional infliction of emotional distress, civil conspiracy, violations of the Computer Fraud and Abuse Act and Stored Communications Act, violations of the District of Columbia Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, violations of the Violence Against Women Reauthorization Act, and common-law trespass to chattels. *See* ECF No. 86. Those claims seek, among other relief, compensatory damages, statutory damages, attorneys' fees, costs, punitive damages, permanent injunctive relief, and declaratory relief.

Ms. Starke died on February 6, 2026. On February 23, 2026, Plaintiff filed a Suggestion of Death as to Defendant Petra Smeltzer Starke on the docket. *See* ECF No. 90. At the time of the

Suggestion of Death, after a diligent search, Plaintiff was not able to locate any probate proceedings that had been filed or any other information regarding a representative of Ms. Starke's estate (the "Estate"). On February 27, 2026, following the filing of the Suggestion of Death, the Court entered a Minute Order staying the case and directing Plaintiff to "file a motion for substitution regarding Defendant Starke under Fed. R. Civ. P. 25(a) no later than May 24, 2026." Minute Order dated Feb. 27, 2026. The Minute Order also stayed "all discovery obligations and the accumulation of new financial obligations relating to the Court's prior sanctions order." *Id.*

The sanctions order referenced in the Court's February 27 Minute Order arose from Ms. Starke's discovery misconduct. *See* ECF No. 73. Plaintiff promptly moved for attorneys' fees pursuant to that Order. *See* ECF No. 74. The Court has not entered a final fee award or final sanctions amount because Ms. Starke had not satisfied her discovery obligations and, before the Court's February 27 stay, had continued to accrue daily sanctions payable to the Court. The February 27 Minute Order stayed the accumulation of new financial obligations but did not vacate the prior sanctions order or vacate the previously accrued sanctions.

Probate proceedings for Ms. Starke's Estate have now been opened in the Circuit Court in and for Manatee County, Florida, Probate Division, Case No. 2026CP000720AX. On April 1, 2026, that court entered an order appointing George Lawrence Starke as Personal Representative of the Estate of Petra Smeltzer Starke, Deceased. *See* Declaration of Jessie F. Beeber, dated May 12, 2026, Exhibit A.[1] Because a duly appointed legal representative for the Estate now exists,

[1] Plaintiff attaches the probate docket because it documents the opening of the probate proceeding and the appointment of the Personal Representative. Certain filings reflected on that docket, including the order appointing Mr. Starke as the representative of the Estate, are currently under seal and are not accessible to Plaintiff on the public docket.

Plaintiff moves to substitute George Lawrence Starke, in his representative capacity only, for Defendant Petra Smeltzer Starke in this Action.

## ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 25(a)(1) provides: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). Rule 25(a)(3) further provides that a motion to substitute "must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). The D.C. Circuit has emphasized that the 1963 amendments to Rule 25 were intended "to liberalize the rule and to allow flexibility in substitution of parties." *Sinito v. U.S. Dep't of Just.*, 176 F.3d 512, 516 (D.C. Cir. 1999) (quoting *McSurely v. McClellan*, 753 F.2d 88, 98–99 (D.C. Cir. 1985)). Consistent with that principle, courts in this District recognize that once a party dies during litigation, Rule 25 provides the mechanism for substitution of a proper party. *See, e.g.*, *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 54 n.2 (D.D.C. 2013) ("A deceased individual cannot serve as the real party in interest in a civil action."); *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 22 n.17 (D.D.C. 2016).

### B. The Action Against Ms. Starke Has Not Been Extinguished

Rule 25(a)(1) authorizes substitution only if "the claim is not extinguished." That requirement is satisfied here. The Amended Complaint asserts multiple accrued claims under the laws of the District of Columbia against Ms. Starke. Under D.C. law, "[o]n the death of a person in whose favor or against whom a right of action has accrued for any cause prior to his death, the right of action, for all such cases, survives in favor of or against the legal representative of the

deceased." D.C. Code § 12-101. The D.C.-law claims asserted here include, among others, invasion-of-privacy claims, intentional infliction of emotional distress, civil conspiracy, a statutory claim under the District of Columbia Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, and common-law trespass to chattels. Thus, at minimum, Plaintiff's accrued D.C.-law claims survive against Ms. Starke's legal representative.

The First Amended Complaint also asserts federal statutory claims arising from pre-death conduct, including claims under the Computer Fraud and Abuse Act ("CFAA"), the Stored Communications Act ("SCA"), and the Violence Against Women Reauthorization Act ("VAWA"). None of these statutes contain express provisions regarding the survivability of claims. In the absence of an express provision, the D.C. Circuit has explained that survivability of a federal statutory claim is a question of federal law, and that the court's task is to "formulate a federal rule of decision that best serves the goals which underlie the federal right of action itself." *Sinito*, 176 F.3d at 513 (quoting *Mallick v. Int'l Bhd. of Elec. Workers*, 814 F.2d 674, 677 (D.C. Cir. 1987)). As the D.C. Circuit recognized in *Mallick*, the fact that Congress has "failed to provide a clause on survivorship to accompany the statute granting the right of action does not necessarily mean that Congress intended that the action abate upon the death of a party." 814 F.2d at 677 (citing *Cox v. Roth*, 348 U.S. 207, 209 (1955)). Rather, courts must examine the purposes underlying the statute to determine whether survival best serves those purposes. *Id.* at 678.

It is well-settled under federal common law that "'remedial' claims—*i.e.*, claims to compensate the plaintiff—survive a party's death, whereas 'punitive' claims—*i.e.*, claims to punish the defendant—do not." *Weatherford U.S., L.P. v. United States DOL*, 68 F.4th 1030, 1036 (6th Cir. 2023) (quoting *Haggard v. Stevens*, 683 F.3d 714, 717 (6th Cir. 2012)). To determine whether a statute is remedial or penal, courts examine three factors: "(1) whether the purpose of

the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Murphy v. Household Fin. Corp.*, 560 F.2d 206, 209 (6th Cir. 1977). The same framework has been applied in this district. In *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69 (D.D.C. 2013), the court addressed whether a relator-plaintiff's False Claims Act claims survived the plaintiff's death. The court confirmed that "[w]hen a federal statute contains no explicit statement on survival rights, . . . the general rule under federal common law is that rights of action under federal statutes survive a plaintiff's death if the statute is remedial, not penal." *Id.* at 80. Applying the *Murphy* three-factor test, the court held that the claims were remedial—because the statute's purpose was to compensate the individual, recovery ran to the harmed individual, and the recovery authorized was not wholly disproportionate to the harm—and therefore survived the plaintiff's death. *Id.*

The rationale for such an outcome is straightforward: the injury to the plaintiff has already been inflicted, the right to redress has vested, and the defendant's death does not retroactively undo the harm. Permitting abatement would create a perverse incentive and an inequitable windfall to the tortfeasor's estate. Accordingly, each of these federal claims should survive Ms. Starke's death. The CFAA claim, 18 U.S.C. § 1030, arises from Ms. Starke's alleged unauthorized access to Plaintiff's password-protected electronic devices, through which she obtained private information that she then used to extort and defame Plaintiff. The CFAA's civil remedy provision, 18 U.S.C. § 1030(g), provides for compensatory damages and equitable relief, and permitting this claim to survive serves the statute's core purpose of deterring unauthorized computer access and providing

a compensatory remedy to victims of such access, objectives that would be frustrated if a defendant's death alone could extinguish liability for completed violations.

The SCA claim, 18 U.S.C. § 2701 *et seq.*, arises from Ms. Starke's alleged unauthorized access to Plaintiff's stored electronic communications, including text messages and other private communications held on servers associated with his social media, email, and cloud accounts. The SCA's civil remedy provision, 18 U.S.C. § 2707, expressly authorizes actual damages, statutory damages, punitive damages, and attorneys' fees, reflecting Congress's intent to provide robust remedies for violations of electronic privacy that should not be nullified by the tortfeasor's death.

The VAWA claim, 15 U.S.C. § 6851, arises from Defendants' nonconsensual disclosure of intimate visual depictions of Plaintiff on a publicly accessible website. The VAWA provides for actual damages or liquidated damages of $150,000, attorneys' fees, and equitable relief, 15 U.S.C. § 6851(b)(3), evidencing Congress's strong remedial intent to compensate victims of nonconsensual intimate image disclosure and to deter such conduct, purposes that warrant survivability against the Estate.

The need for substitution is also underscored by the Court's prior sanctions order. As explained above, before Ms. Starke's death, the Court entered a sanctions order arising from her discovery misconduct, and Plaintiff promptly moved for attorneys' fees pursuant to that Order. *See* ECF Nos. 73, 74. Although the Court's February 27, 2026 Minute Order stayed the accumulation of new financial obligations, the prior sanctions order and related accrued sanctions remain part of this action and should be addressed through Ms. Starke's duly appointed estate representative.

### C. George Starke, As Personal Representative of the Estate, Is the Proper Party to Be Substituted

Rule 25 permits substitution of the decedent's "successor or representative." Fed. R. Civ. P. 25(a)(1). That is precisely who Plaintiff seeks to substitute here. Florida probate proceedings

have now been opened, and George Starke has been appointed Personal Representative of Ms. Starke's Estate. *See* Beeber Decl., Ex. A. Florida law expressly authorizes a personal representative to "[p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate, of the decedent's property, and of the personal representative." Fla. Stat. § 733.612(20). As the court-appointed Personal Representative, George Starke is therefore the proper party to defend the surviving claims against Ms. Starke in this action.

This is exactly the type of representative Rule 25 contemplates. The D.C. Circuit has explained that, on the side of a deceased party, Rule 25 contemplates substitution of "a representative of the estate, such as an executor or administrator." *Rende v. Kay*, 415 F.2d 983, 985–86 (D.C. Cir. 1969). And while Rule 25 can sometimes reach a "successor" even absent a formal estate representative, *see Sinito*, 176 F.3d at 516, this case presents the easier situation as an actual court-appointed estate representative now exists. Substitution of George Starke, solely in his representative capacity as Personal Representative of the Estate of Petra Smeltzer Starke, is therefore proper.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order substituting George Starke, as Personal Representative of the Estate of Petra Smeltzer Starke, Deceased, in place of Defendant Petra Smeltzer Starke.

Dated: New York, NY
May 12, 2026

**VENABLE LLP**
*/s/ Jessie F. Beeber*

Jessie F. Beeber (admitted *pro hac vice)*
Sarika Andavolu (admitted *pro hac vice)*
Venable LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500 Telephone

(212) 307-5598 Fax

Theodore B. Randles (D.C. Bar No. 156339)
Venable LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
tbrandles@venable.com
(202) 344-4271 Telephone
(202) 344-8300 Fax

William J. Briggs II (admitted *pro hac vice)*
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900 Telephone
(310) 229-9901 Fax

*Attorneys for Plaintiff Dan M. Blaylock*