**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DAN M. BLAYLOCK**,<br><br>Plaintiff,<br><br>v.<br><br>**GEORGE STARKE**, as Personal Representative of the Estate of Petra Smeltzer Starke, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-3606 (TNM) |

**MEMORANDUM ORDER**

After Defendant Petra Starke repeatedly disobeyed discovery orders, this Court held her in civil contempt. The Court also ruled that Plaintiff Dan Blaylock was entitled to the attorneys' fees he incurred in briefing his sanctions motion. Blaylock now requests $54,752 for his attorneys' services. Applying the lodestar method, the Court holds that Blaylock's claimed fees are reasonable and grants his application.

**I.**

In September 2025, the Court sanctioned Mrs. Starke for her long-running discovery misconduct. Mem. Order, ECF No. 73. As the Court explained, it had "held its initial status conference setting discovery deadlines in July 2024." *Id.* at 1. "Those deadlines ha[d] been distended beyond recognition," and the Court had "most recently ordered [Mrs.] Starke to complete document production by May 12, 2025." *Id.* After giving a "thorough recounting" of the "tedious" procedural history, the Court found that Defendant had blown past even that latest deadline without any legitimate excuse. *Id.* at 1, 10. The Court thus "h[eld] Starke in civil contempt," *id.* at 12, requiring her, within one week of the order, "to certify under penalty of

perjury that all discovery documents ha[d] been produced," *id.* at 14. "Failure to comply w[ould] result in a $1,000 fine per day until she certifie[d] that production [wa]s complete." *Id.* "Finally, the Court award[ed] Blaylock reasonable attorneys' fees required to brief the motion for sanctions." *Id.*

One week after the sanctions order, the Court denied Defendant's "emailed request to extend the deadline for completing document production." Min. Order 10/6/2025. As the Court emphasized, it "ha[d] already made careful findings of fact about [Mrs. Starke's] ability to produce discovery despite her medical condition," and "[n]othing in [Mrs. Starke's] letter undermine[d] this finding, nor denie[d] the evidence that discovery could and should have long-since been produced." *Id.* The Court reaffirmed Defendant's obligation to "complete all document production," as well as the $1,000 per day fine for "[f]ailure to comply." *Id.*

Later that same month, the Court granted defense counsel's motion to withdraw, and Mrs. Starke (herself an attorney) decided to proceed pro se. Min. Order 10/31/2025. Several months followed without Defendant completing document production. Then, in late February 2026, Blaylock told the Court that Mrs. Starke had passed away. *See* Suggestion of Death, ECF No. 90. The Court stayed the case, including Defendant's discovery obligation and the accruing fine. Min. Order 2/27/2026. Some months later, the Court granted Blaylock's motion to substitute George Starke, Mrs. Starke's widower and personal representative of her estate, as a Defendant in the case. Order, ECF No. 99; *see* Fed. R. Civ. P. 25(a)(1).

In the meantime, Blaylock, per the Court's sanctions order, submitted an "application for attorneys' fees in the amount of $54,752 . . . incurred in connection with filing [the] motion for sanctions." Appl. Att'ys' Fees, ECF No. 74-1, at 1. That application is ripe for the Court's decision.

## II.

Rule 37 sets forth sanctions that the Court may impose for disobeying a discovery order. Fed. R. Civ. P. 37(b)(2)(A). Those include "striking pleadings in whole or in part," "prohibiting the disobedient party from supporting or opposing designated claims or defenses," "dismissing the action," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey." *Id.* Rule 37 also mandates attorneys' fees—stating that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C).

Precedent clarifies what fee amount is reasonable. "A reasonable fee is one that is 'adequate to attract competent counsel, but that does not produce windfalls to attorneys.'" *West v. Potter*, 717 F.3d 1030, 1033–34 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). To calculate reasonable attorneys' fees, courts "multiply the number of hours reasonably expended in litigation by a reasonable hourly rate." *DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019) (cleaned up). A strong presumption exists that the product of those two variables—the "lodestar figure"—constitutes a "reasonable fee." *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (cleaned up), *supplemented*, 483 U.S. 711 (1987). "The moving party bears the burden of proving that the requested amount of attorneys' fees is reasonable." *CFTC v. Trade Exch. Network Ltd.*, 159 F. Supp. 3d 5, 8 (D.D.C. 2015). But "[c]ourts have discretion to adjust the amount requested in light of specific objections by the opposing party." *Id.*

Blaylock "seeks $46,368.50 in attorneys' fees for the 51.2 hours spent by his attorneys at Venable LLP ('Venable') in briefing the Sanctions Motion, and additional attorneys' fees of $8,383.50 for the 8.5 hours Venable spent to prepare its opposition to the Starke Extension Request (totaling $54,752 for 59.7 hours)." Appl. Att'ys' Fees at 5. The Court finds this request reasonable, both in terms of the hourly rate and the hours spent.

Start with the hourly rate. "[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895–96 n.11).

Blaylock meets that standard. His attorneys charged their "typical rates for this matter." Beeber Decl., ECF No. 74-2, ¶ 13. Blaylock's legal team at Venable LLP—a large, nationwide firm—consists of two partners, a junior associate, and an assistant managing clerk. *Id.* ¶¶ 4–12. Jessie F. Beeber ($1,375 per hour) is a partner and chair of the firm's New York commercial litigation group with nearly 30 years of experience in "intellectual property and commercial litigation disputes, including those involving trademark, copyright, trade secrets, false advertising, and right of publicity issues, as well as financial, corporate, insurance coverage, and business tort cases." *Id.* ¶¶ 5–6. William J. Briggs, II ($1,355 per hour) is a Los Angeles partner who has spent more than 30 years litigating "subject matters involving, among other things, complex intellectual property disputes, rights of publicity and First Amendment issues, and employment matters." *Id.* ¶¶ 7–8. Sarika Andavolu ($785 per hour) is a second-year associate in Venable's New York commercial litigation practice. *Id.* ¶¶ 9–10. And Daniel Smith ($520 per hour) is an assistant managing clerk in the firm's New York litigation docketing department,

where he has worked for 14 years. *Id.* ¶¶ 11–12. Given each individual's background and qualifications, the Court concludes that their respective hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Kattan*, 995 F.2d at 278 (cleaned up).

Now consider the hours spent. Courts require "fee applications [to] include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam) (cleaned up). While they need not specify "the exact number of minutes spent" on each task, fee applications "must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (per curiam) (cleaned up). Courts should subtract "hours that are excessive, redundant, or otherwise unnecessary." *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 33 (D.D.C. 2010) ("The key factor to determining whether an attorney's time was reasonably expended on a case is productivity.").

Blaylock's lawyers spent a reasonable number of hours on this matter. They declare that they worked 59.7 hours to brief the sanctions motion and the opposition to Mrs. Starke's October 6, 2025, request to extend the Court's deadline to certify that she had completed discovery. Beeber Decl. ¶ 22. They submit three invoices documenting the hours for which they seek fees. *See* May 2025 Invoice, ECF No. 74-3; June 2025 Invoice, ECF No. 74-4; October 2025 Invoice, ECF No. 74-5. Those invoices reflect that Blaylock's lawyers spent 51.2 hours on the sanctions motion briefing, which "included the Notice of the Sanctions Motion, the Memorandum of Law in Support of the Sanctions Motion, the Declaration of Sarika Andavolu in Support of the

Sanctions Motion and accompanying six exhibits, and the Proposed Order (collectively filed at ECF No. 66) and [Blaylock's] Reply Brief in Support of the Sanctions Motion, and the Declaration of Sarika Andavolu in Further Support of the Sanctions Motion (collectively filed at ECF No. 70)." Beeber Decl. ¶ 22. Appropriately, much of the time was billed by Andavolu, the junior associate. *See id.* Meanwhile, Blaylock's lawyers worked 8.5 hours on opposing Defendant's extension request, and that "work included drafting and submitting [Blaylock's] opposition and ten accompanying exhibits." *Id.*

Having reviewed the invoices, the Court finds them "sufficiently detailed" to show that "the hours claimed are justified." *See Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327 (cleaned up). Considering the scope of Blaylock's briefing both for the sanctions motion and in opposing Defendant's later request to further delay her discovery obligation and the accruing fine, the Court concludes that Blaylock's attorneys spent a reasonable number of hours on their work. Likewise, the Court sees no need to subtract any "excessive, redundant, or otherwise unnecessary" hours. *See Hensley*, 461 U.S. at 434; *see also, e.g.*, *Borum v. Brentwood Vill., LLC*, 2020 WL 5291982, at *6 (D.D.C. Sept. 4, 2020) (deeming reasonable a request for "112.8 hours researching and preparing two briefs, reviewing evidence, conferring with opposing counsel, and preparing to argue the [sanctions] motion").

Because Blaylock's lawyers spent a reasonable number of hours at a reasonable hourly rate, the Court holds that their "lodestar figure" of $54,752 is a "reasonable fee." *See Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 565; *see also Borum*, 2020 WL 5291982, at *6 ("The Court therefore concludes that the hours requested are reasonable and awards the full amount ($60,039.00) requested in connection with the sanctions motion.").

Mrs. Starke filed two oppositions to Blaylock's application, one via her since-withdrawn counsel and one pro se. *See* First Opp'n, ECF No. 77; Second Opp'n, ECF No. 78. Neither raises any "specific objections" to Blaylock's lodestar calculation. *See CFTC*, 159 F. Supp. 3d at 8. Defense thus concedes the requested fees' reasonableness. *Accord Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Hotelco, C.A.*, 342 F. Supp. 3d 1, 28 (D.D.C. 2018) ("The defendants' utter failure to offer any substantive argument as to why the plaintiff's attorney's fee request is unreasonable amounts to waiver as to the full amount of attorney's fees the plaintiff seeks.").

Rather than challenge the fee application on its merits, Defendant relitigates the Court's sanctions ruling, mostly by blaming her former lawyer, and invokes financial hardship. Neither argument works.

Defense insists that Mrs. Starke "ha[d] acted in good faith throughout this litigation." Second Opp'n at 1. According to her, "[a]ny delay or deficiency resulted from prior counsel's misconduct and misrepresentations." *Id.* As evidence, Defendant levies conclusory allegations against her former lawyer, including "misadvice about discovery status," "improper use of an unlicensed and convicted intermediary," "failure to act and misleading conduct," "failure to communicate and conflict of interest," and "withdrawal without notice or communication." *Id.* at 2–4.

This argument falls short. In its sanctions order, the Court ruled that "[a]ll monetary sanctions w[ould] be levied against [Mrs.] Starke rather than her attorney because there [wa]s no evidence before the Court of attorney wrongdoing." Mem. Order at 15; *see also Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1178 (D.C. Cir. 1985) (recognizing that a "district court is in the best position to judge the relative responsibility of counsel and client, and to apportion the sanction

accordingly"). Defendant's unsubstantiated assertions about her former lawyer do not alter that conclusion, which flowed from a "thorough recounting" of this case's "tedious" procedural history. *See* Mem. Order at 1. Defendant's responsibility for her own discovery misconduct is reaffirmed by the fact that she, an attorney in her own right, failed to fulfill her discovery obligation for several months after her lawyer withdrew. Her effort to relitigate the sanctions ruling falters. In any event, the question now before the Court is who should pay for Blaylock's attorneys' fees, Plaintiff or Defendant, not how to apportion blame within the defense team. Defendant's filings just underline the degree of disorder and negligence on the defense side.

Finally, Mrs. Starke contends that the "sanctions should be vacated or reduced due to [her] inability to pay." Second Opp'n at 6. This appeal to financial hardship does not defeat Blaylock's entitlement to reasonable attorneys' fees that he incurred due to Defendant's repeated—and unexcused—discovery misconduct. For starters, Defendant does not provide any concrete evidence of her "inability to pay." *See id.* That omission alone dooms this excuse. *See Johnson v. Holway*, 522 F. Supp. 2d 12, 17 (D.D.C. 2007) ("[U]nsubstantiated assertions of financial hardship . . . are an insufficient basis on which to deny costs." (footnote omitted)). More, and in any event, courts routinely reject financial hardship arguments by parties who "could have avoided [paying attorneys' fees] altogether by cooperating with [opposing] counsel during the discovery process so that the motion . . . for sanctions would never have been necessary." *See, e.g.*, *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 13 (D.D.C. 2009). So too here.

* * *

Mrs. Starke's passing is lamentable, and the Court extends its condolences to her family. Her death does not, however, alter the Court's sanctions ruling, which was based on Defendant's

long-running discovery misconduct that was inexcusable even considering her illness. Nor does Mrs. Starke's demise change the fact that Blaylock is entitled to attorneys' fees that he reasonably incurred due to that misconduct.

**III.**

In sum, the Court holds that Blaylock's requested amount of $54,752 constitutes reasonable attorneys' fees "caused by [Mrs. Starke's] failure" to obey the Court's discovery order and incurred in connection with briefing the sanctions motion. *See* Fed. R. Civ. P. 37(b)(2)(C). The Court awards it in full.

For these reasons, it is hereby

**ORDERED** that Plaintiff's [74] Application for Attorneys' Fees of $54,752 is **GRANTED**.

**SO ORDERED.**

2026.08.19
13:54:24 -04'00'

Dated: August 19, 2026

TREVOR N. McFADDEN, U.S.D.J.