**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAN M. BLAYLOCK,<br><br>Plaintiff,<br><br>- against -<br><br>GEORGE STARKE, *as Personal Representative of the Estate of Petra Smeltzer Starke*, et al.<br><br>Defendants. | Case No.: 1:23-CV-3606-TNM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF DAN M. BLAYLOCK'S MOTION FOR DEFAULT JUDGMENT AGAINST GEORGE STARKE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PETRA SMELTZER STARKE**

## INTRODUCTION

Plaintiff Dan M. Blaylock ("Blaylock") respectfully moves for entry of default judgment against Defendant George Starke, as Personal Representative of the Estate of Petra Smeltzer Starke, Deceased ("Defendant" or the "Estate"). This Court has presided over this matter for nearly three years and has witnessed firsthand Petra Smeltzer Starke's persistent efforts to delay and obstruct these proceedings while the defamatory website she created remains live and accessible to the public. Her untimely passing, while unfortunate, does not extinguish Blaylock's right to seek justice for the serious harm she inflicted. It is time for this case to reach its conclusion.

The Clerk of Court has entered default against the Estate pursuant to Federal Rule of Civil Procedure 55(a). The well-pleaded allegations of the First Amended Complaint establish liability under the federal Computer Fraud and Abuse Act, the federal Stored Communications Act, and the District of Columbia Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, among other claims. Blaylock seeks: (1) a permanent injunction requiring the Estate to take

down and remove all defamatory website content and to delete all intimate images of Blaylock in its possession, custody, or control; (2) statutory damages and actual damages as established in the First Amended Complaint; (3) reasonable attorneys' fees and costs; and (4) such other relief as this Court deems just and proper.

Before addressing the merits of this motion, Blaylock notes that Mr. Starke's belated request to extend the time for counsel to appear on the Estate's behalf is pending on the docket. For the reasons set forth in Section I below, that request does not preclude entry of default judgment against the Estate.

## I. PROCEDURAL BACKGROUND REGARDING GEORGE STARKE'S DEFAULT

Petra Smeltzer Starke died on February 6, 2026. (Suggestion of Death, ECF No. 90.) On March 30, 2026, George Lawrence Starke was appointed Personal Representative of Ms. Starke's estate by the Circuit Court in and for Manatee County, Florida, Probate Division. (Beeber Decl., ECF No. 95-3 (Probate Docket).) On May 12, 2026, Blaylock filed his Motion to Substitute George Starke, as Personal Representative of the Estate, in place of Defendant Petra Smeltzer Starke pursuant to Federal Rule of Civil Procedure 25(a). (ECF No. 95.) Mr. Starke was personally served with the motion papers and summons on June 6, 2026. (See Return of Service, ECF No. 97.)

On June 15, 2026, the Court granted Blaylock's motion to substitute and ordered that the Estate "is substituted in place of Defendant Petra Smeltzer Starke[.]" (Order, ECF No. 99.) On or about June 20, 2026, Mr. Starke sent an email to the Court's chambers acknowledging service and representing that he would enter an appearance or retain counsel by July 15, 2026.

July 15, 2026 passed without any appearance by counsel for the Estate or Mr. Starke himself. On August 3, 2026, Blaylock filed a Notice of Non-Appearance explaining that the Estate had failed to enter an appearance as required (ECF No. 103). On the same day, Mr. Starke filed a

request for extension of time through August 15, 2026. (ECF No. 104.) The Court entered a Minute Order granting the Estate one final opportunity: "Counsel for the Estate of Petra Starke shall enter an appearance no later than August 15, 2026. The case is stayed until then with respect to the Estate of Petra Starke." (Minute Order, Aug. 3, 2026.)

August 15, 2026 was a Saturday. No appearance was entered or motion filed by the Estate by that date or by Monday, August 17, 2026. On August 26, 2026, the Court entered an Order directing Plaintiff to file a request for entry of default by September 9, 2026. (ECF No. 107.) Blaylock timely complied, and on August 28, 2026 the Clerk of Court entered default against the Estate. (Clerk's Entry of Default, ECF No. 111.)

On or about August 17, 2026, Mr. Starke apparently hand-delivered a document to the Clerk's Office captioned as a request for extension of time. No appearance was entered. This document was stamped as received on August 17, 2026, but it did not appear on the electronic docket until approximately August 28, 2026. (ECF No. 109.) Because the request was not visible on the docket, the parties and the Court proceeded under the assumption that the August 15, 2026 deadline had passed without any filing by the Estate. And, in fact, the date passed without any counsel entering an appearance, as required by the August 3 Minute Order. Accordingly, the Court directed Plaintiff to move for clerk's entry of default, and Plaintiff did so.

Even assuming the Court were inclined to consider this untimely and procedurally deficient filing, it would provide no basis to delay entry of default judgment .

First, and most critically, the date Mr. Starke requested in his extension filing—September 17, 2026—has now come and gone. The Estate has still taken no action to appear, retain counsel, file any pleading, or defend this case. Whatever the procedural status of the extension request, it is now moot: the Estate has had the full benefit of the time it requested and has done nothing with

it. The Court may enter default judgment when a defendant "makes no request to set aside the default" and "gives no indication of a meritorious defense." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)). Since the Clerk entered default against the Estate, Mr. Starke has filed no motion to set aside the default, offered no meritorious defense, and given no indication that the Estate intends to participate in this litigation.

Second, even setting aside its mootness, the extension request was procedurally deficient. Mr. Starke hand-delivered documents to the Clerk's Office rather than filing electronically as required by Local Civil Rule 5.4(a), and a personal representative of a decedent's estate is ordinarily required to be represented by counsel in federal court. *See* D.D.C. LCvR 5.4(a); *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202-03 (1993). Mr. Starke also failed to serve his extension request on Plaintiff's counsel as required by Federal Rule of Civil Procedure 5(a)(1)(D). Plaintiff had no knowledge of the filing until it appeared on the docket on August 28, 2026—the same day that the Clerk entered default. And the extension request lacked the substantive showing required under Federal Rule of Civil Procedure 6(b)(1), which requires "good cause" and, for deadlines already passed, a showing of "excusable neglect." Mr. Starke offered no justification for his months of inaction. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Under these circumstances, the extension request provides no basis to delay entry of default judgment.

## II. BLAYLOCK'S CLAIMS

Blaylock filed this action on December 4, 2023 against Petra Smeltzer Starke and John Does 1-5, asserting claims for defamation, invasion of privacy (false light, public disclosure of private facts, and intrusion upon seclusion), intentional infliction of emotional distress, civil

conspiracy, violations of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, violations of the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq*., violations of the D.C. Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act of 2024, D.C. Code § 22-3056, and trespass to chattels. (Compl., ECF No. 1.) These claims arise from Starke's deliberate campaign to publish and disseminate false, private, and intimate information about Blaylock online.

On January 12, 2026, the Court granted Blaylock leave to file his First Amended Complaint (ECF No. 86), adding Jiri Novak as a defendant and asserting additional claims based on the ongoing conduct, including through a defamatory website created in concert with a co-conspirator, Jiri Novak. The First Amended Complaint (hereinafter "Complaint" or "Am. Compl.") asserts the following counts: (I) Defamation; (II) Invasion of Privacy: False Light; (III) Invasion of Privacy: Public Disclosure of Private Facts; (IV) Invasion of Privacy: Intrusion Upon Seclusion; (V) Intentional Infliction of Emotional Distress; (VI) Civil Conspiracy; (VII) Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (VIII) Violations of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*; (IX) Violations of the D.C. Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act of 2024, D.C. Code § 22-3056; (X) Violations of the Violence Against Women Reauthorization Act, 15 U.S.C. § 6851; and (XI) Trespass to Chattels.

## III. LEGAL STANDARD FOR DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining default judgment. First, pursuant to Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, if the plaintiff's

claim "is for a sum certain or a sum that can be made certain by computation," the clerk may enter judgment; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

"A defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). Courts in this District "may rely on detailed affidavits or documentary evidence to determine the appropriate sum [to be awarded pursuant to] the default judgment." *Teamsters Local 639-Employers Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008).

Before entering default judgment, a court should consider whether the defendant is "essentially unresponsive" such that "the adversary process has been halted." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). In evaluating a motion for default judgment, courts consider factors including whether the unchallenged facts establish a legitimate cause of action, whether the defendant has a meritorious defense, whether the defendant's culpable conduct led to the default, and whether the plaintiff will be prejudiced if default is denied. *See id.*

## IV. THE WELL-PLEADED ALLEGATIONS ESTABLISH LIABILITY ON EACH COUNT

Upon entry of default, the well-pleaded factual allegations in the Complaint are deemed admitted. The Complaint alleges that Petra Smeltzer Starke, in concert with her co-conspirator Jiri Novak, engaged in a deliberate campaign to defame Blaylock, invade his privacy, cause him severe emotional distress, and unlawfully access his electronic devices and communications. These admitted allegations establish liability on each of Blaylock's claims.

**Count I: Defamation.** Under D.C. law, defamation requires proof that: (1) the defendant made a false and defamatory statement concerning the plaintiff; (2) the defendant published the

statement without privilege to a third party; (3) the defendant's fault in publishing the statement amounted to at least negligence; and (4) the statement was actionable as a matter of law or the plaintiff suffered special harm. *See Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005). The Complaint alleges that Starke published numerous false statements accusing Blaylock of sexual assault, rape, and other criminal conduct—statements that are defamatory per se. (Am. Compl. ¶¶ 32-96.) These statements were published to Blaylock's family, friends, business associates, and the public at large through a website created by Starke and Novak. (*Id.* ¶¶ 97-103.) These well-pleaded allegations, now deemed admitted, establish liability for defamation.

**Count II: Invasion of Privacy—False Light.** A false light claim requires a showing of: (1) publicity; (2) about a false statement or representation; (3) understood to be of and concerning the claimant; (4) which places him in a false light that would be offensive to a reasonable person. *See Armstrong v. Thompson*, 80 A.3d 177, 188 (D.C. 2013). The Complaint alleges that Starke publicly accused Blaylock of heinous crimes he did not commit, placing him in a false light that would be highly offensive to any reasonable person. (Am. Compl. ¶¶ 105-110.)

**Count III: Invasion of Privacy—Public Disclosure of Private Facts.** This tort requires proof of: (1) publicity; (2) absent any waiver or privilege; (3) given to private facts; (4) in which the public has no legitimate concern; (5) which would be highly offensive to a reasonable person of ordinary sensibilities. *Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. 1989). The Complaint alleges that Starke disclosed private and intimate information about Blaylock, including private photographs and communications, to third parties and the public, without any legitimate public interest. (Am. Compl. ¶¶ 111-115.) Liability is established.

**Count IV: Invasion of Privacy—Intrusion Upon Seclusion.** "[T]he essential features of intrusion upon seclusion are that the defendant intentionally intruded 'upon the solitude or

seclusion of another or his private affairs or concerns' and that such intrusion 'would be highly offensive to a reasonable person.'" *All. for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 102 (D.D.C. 2025) (quoting Restatement (Second) of Torts § 652B). The Complaint alleges that Starke accessed, without authorization, Blaylock's password-protected electronic devices and private communications. She then revealed Blaylock's private photographs and communications to the public. (Am. Compl. ¶¶ 116-119.) This unauthorized access to Blaylock's private electronic devices and communications constitutes a highly offensive intrusion upon his seclusion.

**Count V: Intentional Infliction of Emotional Distress.** To state a claim for IIED under D.C. law, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress." *Robertson v. D.C.*, 269 A.3d 1022, 1033 (D.C. 2022). The Complaint alleges that Starke and Novak engaged in a coordinated campaign of harassment, defamation, extortion, and public humiliation against Blaylock, including creating a defamatory website, disseminating false accusations of rape and sexual assault to his family and business associates, and threatening to expose private information unless Blaylock paid her money. (Am. Compl. ¶¶ 120-123.) Such conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Joyner v. Sibley Mem'l Hosp.*, 826 A.2d 362, 373 (D.C. 2003).

**Count VI: Civil Conspiracy.** Under D.C. law, civil conspiracy requires proof of: (1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an act committed in furtherance of the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). The Complaint alleges that Starke conspired with Novak to create and maintain a

defamatory website, to disseminate false and defamatory statements about Blaylock, and to invade his privacy through unauthorized access to his electronic devices. (Am. Compl. ¶¶ 124-128.) These allegations establish the elements of civil conspiracy.

**Count VII: Violations of the Computer Fraud and Abuse Act ("CFAA").** The CFAA, 18 U.S.C. § 1030, prohibits unauthorized access to protected computers and provides a civil remedy for violations. 18 U.S.C. § 1030(g). The Complaint alleges that Starke intentionally accessed Blaylock's password-protected electronic devices without authorization and obtained information from those devices that she then used to extort and defame him. (Am. Compl. ¶¶ 129-138.) These allegations establish a violation of the CFAA.

**Count VIII: Violations of the Stored Communications Act ("SCA").** The SCA, 18 U.S.C. § 2701, *et seq*., prohibits unauthorized access to stored electronic communications and provides a civil remedy for violations. 18 U.S.C. § 2707. The Complaint alleges that Starke intentionally accessed, without authorization, electronic communications stored on Blaylock's devices and on the servers of electronic communication service providers, and that she disclosed those communications to third parties. (Am. Compl. ¶¶ 139-147.) These allegations establish a violation of the SCA.

**Count IX: Violations of the D.C. Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act of 2024.** The D.C. Intimate Images Act, D.C. Code § 7-2162, provides a civil cause of action against any person who discloses an intimate image of another person without consent and with knowledge or reckless disregard that the depicted person did not consent to the disclosure. The statute provides for actual damages, statutory damages of up to $10,000 per violation, injunctive relief, and reasonable attorneys' fees. D.C. Code § 7-2165. The Complaint alleges that Starke disclosed intimate images of Blaylock without his consent through

the defamatory website that was accessible to the public, and directly to third parties. (Am. Compl. ¶¶ 148-161.) These allegations establish a violation of the D.C. Intimate Images Act.

**Count X: Violations of the Violence Against Women Reauthorization Act ("VAWA").** The VAWA, 15 U.S.C. § 6851, provides a civil cause of action for the nonconsensual disclosure of intimate visual depictions. A claim under VAWA requires: (1) an intimate visual depiction; (2) disclosure in interstate or foreign commerce; (3) nonconsensual disclosure; and (4) disclosure by the defendant. 15 U.S.C. § 6851(b)(1)(A). The statute provides for actual damages or liquidated damages in the amount of $150,000, attorneys' fees and costs, and injunctive relief. 15 U.S.C. § 6851(b)(3). The Complaint alleges that Starke disclosed intimate visual depictions of Blaylock—photographs depicting his pubic area that identify him by his face and name—on a publicly accessible website without his consent. (Am. Compl. ¶¶ 162-175.) These allegations establish a violation of the VAWA.

**Count XI: Trespass to Chattels.** Under D.C. law, "[a] trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Pearson v. Dodd*, 410 F.2d 701, 707 n.30 (D.C. Cir. 1969) (quoting Restatement (Second) of Torts § 217 (1965)). The Complaint alleges that Starke intentionally accessed and interfered with Blaylock's electronic devices—his personal property—without authorization, causing harm to his possessory interest in those devices and the data stored thereon. (Am. Compl. ¶¶ 176-184.)

## V. THE DEFAULT JUDGMENT FACTORS FAVOR ENTRY OF JUDGMENT

"To warrant a default judgment, the defendant must be considered a 'totally unresponsive' party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of a default, and the motion for a default judgment." *Teamsters Local 639-*

*Employers Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). The Estate's lack of action satisfies this standard.

**The Estate is a totally unresponsive party.** Since being substituted as Defendant on June 15, 2026, the Estate has failed to enter an appearance, retain counsel, or file any responsive pleading. The Estate did not respond to the motion to substitute, did not respond to the Court's July 15 deadline, did not respond to the extended August 15 deadline, and did not respond to the Clerk's entry of default. The hand-delivered document that eventually appeared on the docket was procedurally deficient, did not comply with the Local Rules or Federal Rules, and was not served on Plaintiff. The Estate has made no effort whatsoever to defend this action on the merits.

**The Estate's default is plainly willful.** The Estate's default is the result of deliberate inaction, not excusable neglect. Mr. Starke was personally served with the motion to substitute on June 6, 2026—over three months ago. He acknowledged service in an email to the Court's chambers and represented that he would enter an appearance or retain counsel by July 15, 2026. Despite this representation, he took no action. The Court granted an extension to August 15, 2026—again, no action was taken. Mr. Starke's pattern of making representations to the Court and then failing to follow through demonstrates that his default is willful, not inadvertent.

Beyond the threshold showing required to enter default judgment, several additional considerations confirm that judgment is appropriate here. First, the well-pleaded allegations of the Complaint—now deemed admitted—establish each element of every claim asserted against the Estate. As demonstrated in Part IV above, the factual allegations describe a coordinated campaign of defamation, privacy invasion, and harassment that constitute clear violations of federal and D.C. law. Second, the Estate has no meritorious defense. Although Ms. Starke filed an Answer to the

original Complaint (ECF No. 26), that Answer consisted primarily of general denials without factual support. More importantly, Ms. Starke never answered the First Amended Complaint, and the Estate has made no effort to defend this action since her death. The Court has no basis to conclude that any meritorious defense exists.

Third, Blaylock will be severely prejudiced if default judgment is denied. Blaylock has been forced to litigate this case for nearly three years while suffering ongoing harm. The defamatory website created by Starke and Novak remains live on the internet, continuing to damage Blaylock's reputation every day it remains accessible. The intimate images that Starke unlawfully obtained and disclosed remain in the Estate's possession, custody, or control, posing an ongoing threat of further disclosure. Denying default judgment would permit the Estate to benefit from its complete abandonment of this litigation while Blaylock continues to suffer irreparable harm. Finally, the public has a strong interest in the enforcement of laws protecting individuals from defamation, invasion of privacy, unauthorized disclosure of intimate images, and cybercrimes. Default judgment against the Estate would serve these public interests and support the efficient administration of justice.

## VI. RELIEF REQUESTED

Blaylock respectfully requests that the Court enter default judgment against the Estate and award the following relief:

### A. Permanent Injunctive Relief

Blaylock seeks a permanent injunction requiring the Estate to: (1) take down and remove from the internet all defamatory website content concerning Blaylock, including the website created and maintained by Starke and Novak; (2) delete and destroy all intimate images of Blaylock in the Estate's possession, custody, or control; (3) refrain from publishing, disseminating,

or disclosing any defamatory statements or intimate images concerning Blaylock; and (4) provide certification to Blaylock within thirty (30) days of the Court's order that the Estate has complied with the foregoing requirements.

The well-pleaded allegations establish that Blaylock is entitled to injunctive relief. The defamatory website remains live, continuing to cause ongoing harm to Blaylock's reputation. The intimate images unlawfully obtained by Starke remain in the Estate's possession, posing an ongoing threat of further disclosure. A permanent injunction is appropriate where the plaintiff demonstrates irreparable harm, inadequacy of legal remedies, that the balance of hardships favors equitable relief, and that the injunction would not disserve the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

**B. Statutory and Actual Damages**

The D.C. Intimate Images Act provides for statutory damages of up to $10,000 per violation, in addition to actual damages. D.C. Code § 7-2165. The Violence Against Women Reauthorization Act ("VAWA") provides for actual damages or, in the alternative, liquidated damages of $150,000. 15 U.S.C. § 6851(b)(3). The CFAA provides for compensatory damages and, in certain circumstances, statutory damages. 18 U.S.C. § 1030(g). The SCA similarly provides for statutory damages of at least $1,000 per violation. 18 U.S.C. § 2707(c). Juries in the District of Columbia and elsewhere have awarded substantial damages in cases involving similar claims. *See, e.g.*, *Freeman v. Giuliani*, No. 1:21-cv-3354 (D.D.C. Dec. 15, 2023) ($145 million jury verdict for defamation, intentional infliction of emotional distress, and civil conspiracy). Courts routinely award $150,000 in liquidated damages under VAWA in default judgment proceedings. *See, e.g.*, *Jenkins v. Redden*, No. 1:23-cv-00042-CCE-JEP (M.D.N.C. June 21, 2023) ($150,000 default judgment for nonconsensual disclosure of intimate images under 15 U.S.C. § 6851); *Aaron v.*

*Ferrell*, No. 2:23-cv-00374-CWB (M.D. Ala. July 21, 2025) ($150,000 judgment after bench trial for disclosure of intimate video via Facebook); *K.I. v. Tyagi*, No. 1:23-cv-02383-JRR (D. Md. Nov. 25, 2024) ($150,000 default judgment under 15 U.S.C. § 6851). *Jane Doe v. Gipson*, No. 1:23-cv-463-RP (W.D. Tex. Apr. 23, 2025), awarded $1.3 million in a VAWA jury trial, including $250,000 in non-economic damages and $1 million in punitive damages.

Based on the well-pleaded allegations, Blaylock respectfully requests a minimum damage award of $200,000. This amount reflects: (a) $150,000 in liquidated damages under VAWA, 15 U.S.C. § 6851(b)(3); and (b) $50,000 in statutory damages under the D.C. Intimate Images Act, representing $10,000 for each of the five intimate images of Blaylock published on the website without his consent. D.C. Code § 7-2165. This amount is presumptively reasonable in light of the additional compensatory damages Blaylock has suffered, including harm to his reputation, severe emotional distress caused by the publication of intimate images and false accusations of rape and sexual assault, and ongoing injury from the defamatory website that remains live. As set forth in the Declaration of Dan M. Blaylock submitted herewith (the "Blaylock Declaration"), the requested amount represents a conservative estimate of the damages Blaylock has suffered as a result of the Estate's conduct.

This Court has observed the full arc of this litigation—including Ms. Starke's repeated dilatory tactics, her failure to engage in good faith with these proceedings, and the ongoing harm to Blaylock caused by her refusal to remove the defamatory website. While Petra Smeltzer Starke's death is a sad circumstance, it does not diminish the wrongfulness of her conduct or Blaylock's entitlement to relief. After nearly three years of litigation, Blaylock respectfully submits that the time has come for this matter to be resolved and for him to obtain the closure and justice he has long sought.

### C. Attorneys' Fees and Costs

The D.C. Intimate Images Act expressly provides for an award of reasonable attorneys' fees and costs to a prevailing plaintiff. D.C. Code § 7-2165. VAWA similarly provides for the recovery of reasonable attorney's fees and costs. 15 U.S.C. § 6851(b)(3)(C). Blaylock seeks an award of reasonable attorneys' fees and costs incurred in prosecuting this action. Blaylock will submit documentation supporting the fee request upon the Court's request or at any hearing scheduled pursuant to Rule 55(b)(2).

## CONCLUSION

For the foregoing reasons, Plaintiff Dan M. Blaylock respectfully requests that the Court enter default judgment against Defendant George Starke, as Personal Representative of the Estate of Petra Smeltzer Starke, Deceased, and award the following relief:

(1) A permanent injunction requiring the Estate to: (a) take down and remove from the internet all defamatory website content concerning Blaylock; (b) delete and destroy all intimate images of Blaylock in the Estate's possession, custody, or control; (c) refrain from publishing, disseminating, or disclosing any defamatory statements or intimate images concerning Blaylock; and (d) provide certification of compliance within thirty (30) days;

(2) Damages in the amount of at least $200,000, consisting of statutory damages under the D.C. Intimate Images Act, the Computer Fraud and Abuse Act, and the Stored Communications Act, together with compensatory damages for harm to reputation, emotional distress, and related injuries;

(3) Reasonable attorneys' fees and costs pursuant to D.C. Code § 7-2165 and 15 U.S.C. § 6851(b)(3)(C); and

(4) Such other and further relief as the Court deems just and proper, as more fully set forth in the proposed Default Judgment Order submitted herewith.

Dated: Los Angeles, CA
September 24, 2026

**VENABLE LLP**
*/s/ William J. Briggs II*

Jessie F. Beeber (admitted *pro hac vice)*
Sarika Andavolu (admitted *pro hac vice)*
Venable LLP
151 West 42nd Street, 49th Floor
New York, NY 10036
(212) 307-5500 Telephone
(212) 307-5598 Fax

Theodore B. Randles (D.C. Bar No. 156339)
Venable LLP
600 Massachusetts Avenue, N.W.
Washington, DC 20001
tbrandles@venable.com
(202) 344-4271 Telephone
(202) 344-8300 Fax

William J. Briggs II (admitted *pro hac vice)*
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9900 Telephone
(310) 229-9901 Fax

*Attorneys for Plaintiff Dan M. Blaylock*